AMY J. GREER
SCOTT A. THOMPSON
TAMI S. STARK (TS-8321)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
701 Market Street
Suite 2000
Philadelphia, PA 19106
Telephone: (215) 597-3100
Telefax: (215) 597-2740

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

    v.

ANATOLY RUSS,

    Defendant.

JUDGE SAND

08 CV 0415

Civil Action No.

---

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

### SUMMARY

1. This matter involves a fraudulent scheme conducted by defendant Anatoly Russ, a Russian citizen, to control the prices at which he purchased and sold options on iShares Lehman Aggregate Bond Fund ("AGG"), an Exchange Traded Fund ("ETF"), by fraudulently placing unauthorized orders in online brokerage accounts designed to match orders entered in his own account.

2.     Russ electronically stole and used usernames and passwords to gain unauthorized Internet access to online brokerage accounts (the "intruded accounts") for the sole purpose of entering purchase or sell orders that would be executed opposite orders that he had placed in his own brokerage account.

3.     Between August 23, 2006, and September 19, 2006, as a result of these unlawful intrusions into online brokerage accounts, Russ realized at least $88,465 in unlawful profits. Intruded accountholders suffered losses of at least $339,929 as a result of Russ' unauthorized trades. The online broker-dealers whose customers' accounts were intruded have since made those accountholders whole by taking the losses themselves.

4.     To effect his fraudulent scheme, Russ placed orders to buy AGG options contracts in his own online trading accounts at low prices. Around the same time, without the accountholders' knowledge and using the victims' own funds, Russ purchased AGG options contracts in the intruded accounts. Russ then placed orders to sell the AGG options contracts in the intruded accounts matching the orders entered in his accounts. Once the trades were executed, Russ placed orders to sell the options contracts in his accounts at inflated prices – sometimes as high as sixteen-times the prices at which he had purchased the options contracts – and placed matching orders to buy the options contracts in the intruded accounts.

5.     AGG options are highly illiquid securities. As a result, Russ was able to control the prices at which he purchased and sold the options, allowing him to earn guaranteed profits.

6.     Within a few days of his trades, Russ wired portions of his unlawful profits from his online brokerage accounts to two bank accounts in his name located in

Riga, Latvia. In total, Russ wired $65,000 of his ill-gotten proceeds to his Latvian bank accounts.

7. By knowingly or recklessly engaging in the conduct described in this Complaint, defendant violated, and unless restrained and enjoined, will continue to violate Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5], thereunder.

## JURISDICTION AND VENUE

8. The Commission brings this action pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] to enjoin such acts, transactions, practices, and courses of business, obtain disgorgement and civil penalties, and for other appropriate relief.

9. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

10. Certain of the acts, transactions, practices, and courses of business constituting the violations alleged herein occurred within the Southern District of New York. Some of the broker-dealers affected by the scheme are located in the Southern District of New York, and certain of the fraudulent trades were executed on the American Stock Exchange, also located in the Southern District of New York. Certain of the acts, transactions, practices, and courses of business constituting the violations alleged herein also were effected, directly or indirectly, by making use of the means and instruments of transportation or communication in interstate commerce, or the means and

instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange.

## DEFENDANT

11. Anatoly Russ, age 25, carries a Russian passport and is believed to currently reside in Novaya Ladoga, Russia. At all relevant times, Russ maintained online brokerage accounts at NobleTrading.com, Inc., TD Ameritrade, Inc., and optionsXpress, Inc.

## FACTS

### Russ' Account Intrusions Scheme

12. During a two-week period in August and September 2006, Russ engaged in a pattern of purchasing four series of thinly traded AGG options contracts and subsequently selling the contracts the same day at inflated prices that did not reflect the true economic value of the options contracts.

13. Russ' trades occurred at the same time that account intrusions and unauthorized trades involving the same AGG options series were occurring in seven online brokerage accounts. The intruded accounts were held at E*Trade Securities, LLC, TD Ameritrade, Inc., and Scottrade, Inc.

14. In order to conduct his scheme, Russ electronically stole usernames and passwords unbeknownst to the accountholders. Russ gained entry into the intruded accounts on the day the unauthorized trades occurred through the online broker-dealer's secure website using the accountholder's unique username and password.

15. Russ hid his identity, through various electronic means, by masking his Internet Protocol ("IP") address when he logged into his online accounts and intruded

into the victims' online accounts. An IP address individually identifies a computer and can provide information about its geographic location. The IP addresses Russ used to access his online accounts differed from the IP addresses Russ used to intrude into the victims' accounts.

16. Russ' scheme generally worked as follows:

a. Russ entered a limit order to purchase AGG options contracts in his own account.

b. Around the same time, Russ, using electronically stolen usernames and passwords, intruded into an innocent third party online brokerage account, and without the knowledge, authorization or consent of the unwitting accountholder, purchased AGG options contracts in the intruded account.

c. If the intruded account lacked sufficient equity to fund the purchase of the AGG options contracts, Russ liquidated legitimate securities positions from the account.

d. Russ then caused the intruded account to enter a limit or market order to sell AGG options contracts. Russ designed the sell order generally to match his purchase order in terms of the quantity and price of the AGG options contracts as well as the time at which the order was entered.

e. The unauthorized sell order was executed opposite Russ' purchase order.

  f. Russ then entered a limit order to sell the AGG options contracts at a price significantly higher than the price at which he had purchased the AGG options contracts.

  g. Russ then caused the intruded account to enter a limit or market order to purchase AGG options contracts at an inflated price, which was designed generally to match Russ' sell order in terms of quantity, price, and time.

  h. The unauthorized purchase order was executed opposite Russ' sell order.

17. As a result of his fraudulent scheme, Russ artificially inflated the prices and volume of the following four series of AGG options contracts.

### AGG March 07 97 Puts ("AGGOO")

18. On August 23, 2006, Russ entered a limit order to purchase 320 contracts of AGG put options with a strike price of $97 expiring in March 2007 (the "AGGOO contracts") at $.05 in his TD Ameritrade account. Later that day, Russ entered a limit order to sell the AGGOO contracts at $.80. Both orders were matched with unauthorized orders in an intruded account at E*Trade.

19. The detailed timeline of Russ' trades, in his own and the intruded accounts, in AGGOO put options on August 23, 2006 is as follows:

| | |
|---|---|
| August 23, 2006 7:54 a.m. | Russ enters a limit order to purchase 320 AGGOO contracts at $.05. |
| August 23, 2006 10:24 a.m. to 10:35 a.m. | An intruded account at E*Trade purchases 505 AGGOO contracts at $.70 to $1.00. |
| August 23, 2006 10:36 a.m. | The same intruded account submits a market order to sell 505 AGGOO contracts. Russ' AGGOO purchase order is executed opposite it. |

| August 23, 2006 10:41 a.m. | Russ enters a limit order to sell 320 AGGOO contracts at $.80. |
|---|---|
| August 23, 2006 10:45 a.m. | The same intruded account submits a limit order to purchase 500 AGGOO contracts at $1.00. Russ' AGGOO sell order is executed opposite it. |

20.     Russ realized $23,499 in profits from his fraudulent trading in AGGOO options on August 23, 2006. Shortly after executing the trades, Russ wired $15,000 of the unlawful profits to his bank account in Latvia. The next day, August 24, 2006, Russ wired an additional $5,000 to his Latvian account.

21.     Russ' trades through his own account and the corresponding unauthorized trades in the intruded accounts accounted for nearly 100 percent of the total trading volume in AGGOO contracts on August 23, 2006.

22.     On August 28, 2006, Russ again traded in AGGOO contracts. Russ entered a limit order to purchase 500 AGGOO contracts at $.10 in his TD Ameritrade account. A portion of this order, or 340 contracts, was matched with an unauthorized sell order in a second intruded account at E*Trade. Shortly thereafter, Russ entered a limit order to sell the 340 AGGOO contracts at $.95. A portion of Russ' sell order, or 166 contracts, was matched with a series of unauthorized orders in a Scottrade account and a third intruded E*Trade account.

23.     The detailed timeline of Russ' trades, in his own and the intruded accounts, in AGGOO put options on August 28, 2006 is as follows:

| August 28, 2006 9:54 a.m. | Russ enters a limit order to purchase 500 AGGOO contracts at $.10. |
|---|---|
| August 28, 2006 9:57 a.m. | A second intruded account at E*Trade purchases 340 AGGOO contracts at $.90 to $1.00. |
| August 28, 2006 9:59 a.m. | The same intruded account submits a market order to sell 340 AGGOO contracts. Russ' AGGOO purchase order is executed opposite it. |

7

| | |
|---|---|
| August 28, 2006 10:54 a.m. | Russ enters a limit order to sell 340 AGGOO contracts at $.95. |
| August 28, 2006 10:56 a.m. | An intruded account at Scottrade submits a limit order to purchase 100 AGGOO contracts at $1.00. A portion (100 AGGOO contracts) of Russ' sell order is executed opposite it. |
| August 28, 2006 11:07 a.m. | A third intruded account at E*Trade submits a limit order to purchase 50 AGGOO contracts at $1.00. A portion (50 AGGOO contracts) of Russ' sell order is executed opposite it. |
| August 28, 2006 11:08 a.m. | The third intruded account at E*Trade submits a limit order to purchase 16 AGGOO contracts at $1.00. A portion (16 AGGOO contracts) of Russ' sell order is executed opposite it. |

24. Russ realized $12,370 in profits from his fraudulent trading in AGGOO options on August 28, 2006. Shortly after executing the trades, Russ wired $15,000 of the unlawful profits to his Latvian bank account.

25. Russ' trades through his own account and the corresponding unauthorized trades in the intruded accounts accounted for nearly 100 percent of the total trading volume in AGGOO contracts on August 28, 2006.

26. Based on the nature of Russ' trading, as well as information provided by E*Trade, on August 28, 2006, TD Ameritrade placed a "no funds out" restriction on Russ' account. The restriction prohibited Russ from withdrawing funds from his account, but permitted Russ to trade.

27. On August 31, 2006, Russ entered a limit order to sell the remaining 174 AGGOO contracts at $.80. Following execution of the trade, however, TD Ameritrade determined that Russ' sell order matched an unauthorized purchase order in an optionsXpress account. TD Ameritrade and optionsXpress agreed to cancel the trade.

### AGG March 07 99 Puts (AGGOU)

28. On September 5, 2006, Russ entered a limit order to purchase 38 contracts of AGG put options with a strike price of $99 expiring in March 2007 (the "AGGOU contracts") at $.55 in his optionsXpress account. Seven minutes later, Russ entered a limit order to sell the AGGOU contracts at $2.95. These orders were matched with unauthorized orders in an intruded account at TD Ameritrade.

29. The detailed timeline of Russ' trades, in his own and the intruded accounts, in AGGOU put options on September 5, 2006 is as follows:

| September 5, 2006 9:59 a.m. to 10:02 a.m. | An intruded account at TD Ameritrade purchases 110 AGGOU contracts at $3.00. |
|---|---|
| September 5, 2006 10:06 a.m. | Russ enters a limit order to purchase 38 AGGOU contracts at $.55. |
| September 5, 2006 10:10 a.m. | The same intruded account submits a market order to sell 50 AGGOU contracts. Russ' AGGOU purchase order is executed opposite it. |
| September 5, 2006 10:13 a.m. | Russ enters a limit order to sell 38 AGGOU contracts at $2.95. |
| September 5, 2006 10:19 a.m. | The same intruded account submits a limit order to purchase 40 AGGOU contracts at $3.00. Russ' AGGOU sell order is executed opposite it. |

30. Russ realized $9,120 in profits from his fraudulent trading in AGGOU options before 10:30 a.m. on the morning of September 5, 2006.

31. Two minutes after his sell order was executed, Russ entered another limit order to purchase 35 AGGOU contracts in his optionsXpress account at $.60. Russ subsequently entered a limit order to sell the AGGOU contracts at $2.95. This order was not fully executed until the following day. Russ placed purchase and sell orders in his account that matched a series of unauthorized orders in the same intruded TD Ameritrade account.

9

32. The detailed timeline of Russ' trades, in his own and the intruded accounts, in AGGOU put options on September 5 and 6, 2006 is as follows:

| September 5, 2006 10:21 a.m. | Russ enters a limit order to purchase 35 AGGOU contracts at $.60. |
|---|---|
| September 5, 2006 10:32 a.m. | The same intruded account submits a limit order to sell 75 AGGOU contracts at $.50. Russ' AGGOU purchase order is executed opposite it. |
| September 5, 2006 10:34 a.m. | Russ enters a limit order to sell 35 AGGOU contracts at $2.95. |
| September 5, 2006 10:40 a.m. | The same intruded account submits a limit order to purchase 20 AGGOU contracts at $3.00. A portion of Russ' sell order is executed (20 AGGOU contracts) opposite it. |
| September 5, 2006 10:44 a.m. | The same intruded account submits a limit order to purchase 8 AGGOU contracts at $3.00. A portion of Russ' sell order is executed (8 AGGOU contracts) opposite it. |
| September 6, 2006 12:19 p.m. | The same intruded account submits a limit order to purchase 10 AGGOU contracts at $3.00. The remainder of Russ' sell order is executed (7 AGGOU contracts) opposite it. |

33. Russ realized $8,225 in profits from a second round of fraudulent trading in AGGOU options on September 5 and 6, 2006. Shortly after executing the trades, Russ wired $15,000 of the unlawful profits to his Latvian bank account.

34. Russ' trades through his own account and the corresponding unauthorized trades in the intruded accounts accounted for nearly 100 percent of the total trading volume in AGGOU contracts on September 5 and 6, 2006.

35. On September 19, 2006, Russ entered a limit order to purchase 100 AGGOU contracts at $1.00 in his NobleTrading.com account. This order was matched with an unauthorized sell order in a second intruded TD Ameritrade account.

36. Six minutes later, Russ entered a limit order to sell the AGGOU contracts at $2.00. A portion of this order, or 40 contracts, was matched with two unauthorized purchase orders in the second intruded TD Ameritrade account. Russ then entered

another limit order to sell 60 AGGOU contracts at $1.90. Russ placed this order to match three unauthorized purchase orders in a third intruded account at TD Ameritrade.

37. The detailed timeline of Russ' trades, in his own and the intruded accounts, in AGGOU put options on September 19, 2006 is as follows:

| September 19, 2006 11:50 a.m. to 11:52 a.m. | A second intruded account at TD Ameritrade purchases 100 AGGOU contracts at $2.90 to $3.50. |
|---|---|
| September 19, 2006 11:54 a.m. | Russ enters a limit order to purchase 100 AGGOU contracts at $1.00. |
| September 19, 2006 11:55 a.m. | The second intruded account submits a limit order to sell 100 AGGOU contracts at $1.00. Russ' purchase order is executed opposite it. |
| September 19, 2006 12:00 p.m. | Russ enters a limit order to sell 100 AGGOU contracts at $2.00. |
| September 19, 2006 12:01 p.m. | The second intruded account submits a limit order to purchase 20 AGGOU contracts at $2.00. A portion of Russ' purchase order is executed (20 AGGOU contracts) opposite it. |
| September 19, 2006 12:01 p.m. | The second intruded account submits a limit order to purchase 20 AGGOU contracts at $2.00. A portion of Russ' purchase order is executed (20 AGGOU contracts) opposite it. |
| September 19, 2006 12:19 p.m. | Russ enters a limit order to sell 60 AAGOU contracts at $1.90. |
| September 19, 2006 12:24 p.m. | A third intruded account at TD Ameritrade submits a limit order to purchase 20 AGGOU contracts at $1.90. A portion of Russ' purchase order is executed (20 AGGOU contracts) opposite it. |
| September 19, 2006 12:25 p.m. | The third intruded account at TD Ameritrade submits a limit order to purchase 20 AGGOU contracts at $2.00. A portion of Russ' purchase order is executed (20 AGGOU contracts) opposite it. |
| September 19, 2006 12:25 p.m. | The third intruded account at TD Ameritrade submits a limit order to purchase 20 AGGOU contracts at $2.00. The remainder of Russ' purchase order is executed (20 AGGOU contracts) opposite it. |

38. Russ realized $9,175 in profits from his fraudulent trading in AGGOU options on September 19, 2006.

11

39. Russ' trades through his own account and the corresponding unauthorized trades in the intruded accounts accounted for nearly 100 percent of the total trading volume in AGGOU contracts on September 19, 2006.

40. Based on the nature of these trades, NobleTrading.com's clearing broker suspended all trading and withdrawals in Russ' account.

### AGG March 07 100 Puts (AGGOV)

41. On September 7, 2006, Russ entered a limit order to purchase 170 contracts of AGG put options with a strike price of $100 expiring in March 2007 (the "AGGOV contracts") at $.10 in his optionsXpress account. A portion of the order, or 90 contracts, was matched with an unauthorized sell order in a TD Ameritrade account.

42. Shortly thereafter, Russ entered a limit order to sell 90 AGGOV contracts at $3.60. A portion of the order, or 40 contracts, was matched with two unauthorized purchase orders in the same TD Ameritrade account. Russ then entered another limit order to sell 50 AGGOV contracts at $2.80. A portion of the order, or 20 contracts, was matched with two unauthorized purchase orders in the same TD Ameritrade account.

43. The detailed timeline of Russ' trades, in his own and the intruded accounts, in AGGOV put options on September 7, 2006 is as follows:

| September 7, 2006 10:29 a.m. | Russ enters a limit order to purchase 170 AGGOV contracts at $.10. |
|---|---|
| September 7, 2006 10:58 a.m. to 11:07 a.m. | An intruded account at TD Ameritrade purchases 140 AGGOV contracts at $2.90 to $4.00. |
| September 7, 2006 11:17 a.m. | The same intruded account submits a market order to sell 90 AGGOV contracts. A portion of Russ' purchase order is executed (90 AGGOV contracts) opposite it. |
| September 7, 2006 11:20 a.m. | Russ enters a limit order to sell 90 AGGOV contracts at $3.60. |
| September 7, 2006 | The same intruded account submits a limit order to purchase 20 |

12

| | |
|---|---|
| 11:21 a.m. | AGGOV contracts at $4.00. A portion of Russ' sell order is executed (20 AGGOV contracts) opposite it. |
| September 7, 2006 11:21 a.m. | The same intruded account submits a limit order to purchase 20 AGGOV contracts at $3.80. A portion of Russ' sell order is executed (20 AGGOV contracts) opposite it. |
| September 7, 2006 11:25 a.m. | Russ enters a limit order to sell 50 AGGOV contracts at $2.80. |
| September 7, 2006 11:30 a.m. | The same intruded account submits a market order to purchase 10 AGGOV contracts. A portion of Russ' sell order is executed (10 AGGOV contracts) opposite it. |
| September 7, 2006 11:30 a.m. | The same intruded account submits a market order to purchase 10 AGGOV contracts. A portion of Russ' sell order is executed (10 AGGOV contracts) opposite it. |

44.   Russ realized $19,100 in profits from his fraudulent trading in AGGOV options on September 7, 2006. Shortly thereafter, Russ wired $15,000 of the unlawful profits to his Latvian bank account.

45.   Russ' trades through his own account and the corresponding unauthorized trades in the intruded accounts accounted for nearly 100 percent of the total trading volume in AGGOV contracts on September 7, 2006.

### AGG March 07 105 Puts (AGGOA)

46.   On September 19, 2006, Russ entered a limit order to purchase 25 contracts of AGG put options with a strike price of $105 expiring in March 2007 (the "AGGOA contracts") at $4.20 in his NobleTrading.com account. Later that day, Russ entered a limit order to sell the AGGOA contracts at $6.70. Both trades were matched with unauthorized trades in an intruded account at TD Ameritrade.

47.   The detailed timeline of Russ' trades, in his own and the intruded accounts, in AGGOA put options on September 19, 2006 is as follows:

| | |
|---|---|
| September 19, 2006 10:34 a.m. | Russ enters a limit order to purchase 25 AGGOA contracts at $4.20. |
| September 19, 2006 | An intruded account at TD Ameritrade purchases 50 AGGOA |

13

| 10:49 a.m. to 10:50 a.m. | contracts at $7.40. |
|---|---|
| September 19, 2006 10:53 a.m. | The same intruded account submits a limit order to sell 30 AGGOA contracts at $4.00. Russ' AGGOA purchase order is executed opposite it. |
| September 19, 2006 11:03 a.m. | Russ enters a limit order to sell 25 AGGOA contracts at $6.70. |
| September 19, 2006 11:04 a.m. | The same intruded account submits a limit order to buy 30 AGGOA contracts at $7.00. Russ' AGGOA sell order is executed opposite it. |

48.     Russ realized $6,183 in profits from his fraudulent trading in AGGOA options on September 19, 2006.

49.     Russ' trades through his own account and the corresponding unauthorized trades in the intruded accounts accounted for 89 percent of the total trading volume in AGGOA contracts on September 19, 2006.

### The Trading Pattern Clearly Shows A Fraudulent Scheme

50.     There is no innocent explanation for the pattern and timing of Russ' trades, and the way in which they match up to the trades in the intruded accounts. In multiple instances, Russ was on the opposite side of unauthorized trades, and in each of these instances, the trading always results in a significant profit in Russ' account, and a loss in the intruded account.

51.     Russ' trading through his own account and the corresponding unauthorized trades in the intruded accounts accounted for 100 percent or nearly 100 percent of the total trading volume in the four AGG options series on the six days that Russ traded. In fact, there was no trading in these options series during the two weeks preceding and two weeks following Russ' trading.

52. Russ did not trade in AGG options other than as part of this fraudulent scheme. In addition, Russ' pattern of wiring his profits overseas shortly after trading indicates that he recognized that he should protect his illegal gains before detection.

53. When certain of the online broker-dealers detected unusual trading patterns in Russ' accounts, as detailed above, they took steps to attempt to halt the practice by freezing his ability to transfer funds and by halting at least one trade. When this occurred, Russ did not stop his scheme, but instead began using his accounts at other online broker-dealers to continue his fraudulent trading.

54. Russ' scheme was very profitable, and there are many innocent victims, including the intruded accountholders, the online broker-dealers who serviced the intruded accounts and ultimately made the intruded accountholders whole, and the investors who were active in the market at the time Russ was entering the matched orders.

## CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

55. The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 54, inclusive, as if the same were fully set forth herein.

56. From at least August 23, 2006, and continuing through September 19, 2006, as a result of the conduct alleged herein, Russ, knowingly or recklessly, in connection with the offer, purchase, or sale of securities, directly or indirectly, by the use of the means or instruments of transportation or communication in interstate commerce,

or the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

    (a)    employed devices, schemes or artifices to defraud;

    (b)    obtained money or property by means of, or made, untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    (c)    engaged in acts, transactions, practices, or courses of business that operated as a fraud or deceit upon offerees, purchasers, and prospective purchasers of securities.

57.    By engaging in the foregoing conduct, Russ violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5], thereunder.

**WHEREFORE**, the Commission respectfully requests that this Court:

### I.

Permanently restrain and enjoin defendant Russ, and his agents, officers, servants, employees, attorneys, and those persons in active concert or participation with him, directly or indirectly, singly or in concert, from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5], thereunder.

II.

Order defendant Russ to disgorge any and all ill-gotten gains, together with prejudgment interest, derived from the activities set forth in this Complaint, in accordance with a plan of disgorgement acceptable to the Court and to the Commission.

III.

Order defendant Russ to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], in an amount to be determined by the Court.

IV.

Grant such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

_/s/ Tami Stark_
Daniel M. Hawke
Elaine C. Greenberg
Amy J. Greer
Scott A. Thompson
Tami S. Stark  (TS-8321)
Mary P. Hansen (MH-9947)
Suzanne C. Abt

Attorneys for Plaintiff

**SECURITIES AND EXCHANGE COMMISSION**
Mellon Independence Center
701 Market Street, Suite 2000
Philadelphia, PA  19106
Telephone: (215) 597-3100
Facsimile: (215) 597-2740

Dated: January 16, 2008