AMY J. GREER
SCOTT A. THOMPSON
TAMI S. STARK (TS-8321)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
701 Market Street
Suite 2000
Philadelphia, PA  19106
Telephone: (215) 597-3100
Telefax: (215) 597-2740

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____
                                                          :
SECURITIES AND EXCHANGE COMMISSION,                       :
                                                          :
                            Plaintiff,                    :
                                                          :
                    v.                                    :    Civ No. 08CV0415 (LBS)
                                                          :     (Electronically Filed)
ANATOLY RUSS,                                             :
                                                          :
                            Defendant.                    :
_____:

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S EX PARTE MOTION TO SERVE DEFENDANT ANATOLY RUSS BY ALTERNATIVE MEANS

Plaintiff Securities and Exchange Commission ("Commission") respectfully submits this memorandum of law in support of its ex parte motion to the Court for an Order, pursuant to Federal Rule of Civil Procedure 4(f)(3), directing alternative means of service of the Summons and Complaint upon defendant Anatoly Russ, a citizen and resident of Russia who has engaged in repeated and deliberate securities fraud by intruding into innocent third parties' online trading accounts.  Although Russia is a signatory to the 1965 Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), which generally

allows for international service of process, it has not honored its obligations under that treaty and has expressly declared that it will not do so. Therefore, alternative means of service are necessary.

In support of its Motion, the Commission has attached hereto the Declaration of Edward Betancourt, of the United States Department of State (Exhibit A), and a declaration of the undersigned, Scott A. Thompson ("Thompson Declaration") (Exhibit B), each of which is incorporated herein by reference. These attachments reflect the futility of service by resort to the Hague Convention, as well as the attempts by the Commission to notify defendant of the pendency of this action. For the reasons set forth below, the Commission's Motion should be granted, and alternative service should be permitted by email to the account Russ used to set up his brokerage accounts through which he perpetrated the fraud, and to transfer his ill-gotten gains, and by international courier and by international registered mail to the street addresses and post office boxes that he provided to his online brokers and bank.

## **BACKGROUND**[1]

### I.    THE FRAUD

Anatoly Russ engaged in a complex fraudulent internet scheme by which he manipulated the prices at which he purchased and sold options on iShares Lehman Aggregate Bond Fund (AGG), a thinly traded Exchange Traded Fund, by hacking into third parties' online brokerage accounts (the "intruded accounts") and placing unauthorized orders designed to match orders in his own online accounts. In just over a three week period from August 23 and September 19, 2006, Russ used electronically

---

[1]    These background facts are taken from the allegations in the Complaint.

stolen usernames and passwords to gain access to at least seven online brokerage accounts of unwitting third parties, while trading in four series of the thinly traded AGG option contracts. Through this process, he was able to guarantee that his own accounts could "buy low," and "sell high," at prices many times higher than the market price, thus generating large profits for himself at the expense of the owners of the intruded accounts.

Apparently mindful of the possibility of detection, Russ went to great lengths to attempt to hide his activities. For example, through various technological means, he masked his Internet Protocol ("IP") address when he logged into his online accounts and the intruded accounts.[2] Moreover, when certain of the online broker-dealers began to suspect illicit behavior and froze certain of his accounts, he stopped using those accounts and began to trade through other accounts.[3]

As a result of his fraudulent scheme, Russ realized at least $88,465 in unlawful profits and caused losses of $339,929 in the intruded online accounts.[4]

## II.     THIS CIVIL ACTION

On January 16, 2008, the Commission filed this action against Anatoly Russ, alleging violations of Section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5], thereunder. Shortly thereafter, the Commission attempted to provide notice of this litigation to Russ, who resides in Russia.

---

[2]     An IP address individually identifies a computer and can provide information about its geographic location.

[3]     As a result of these freezes, at least some of Russ' ill-gotten proceeds are currently held in frozen accounts by U.S. based broker-dealers.

[4]     The online brokers have reimbursed the account holders for all losses related to Russ' unlawful scheme, bearing the losses themselves.

The Commission sent a copy of the Complaint via email to the email account that Russ used to set up each of his online brokerage accounts through which he perpetrated the fraud, to send various emails to brokers to inquire as to the status of his account, and to follow up on his attempts to wire his ill-gotten gains to his Latvian bank account.  See Thompson Declaration ¶ 5, Exhibit B.  Russ also requested to receive communications from at least some of his brokers at this same email address.  See id.

The Commission also issued a "Litigation Release" on its website, http://www.sec.gov, identifying Russ by name, summarizing the Commission's allegations, and attaching a copy of the filed Complaint.  This release was picked up by several online news sources, including at least two Russian news websites, kommersant.com, and themoscowtimes.com, as well as sources such as MSNBC, Business Week, and Yahoo, which published articles concerning the filing of the Complaint.  See id. ¶ 4.[5]

The Commission now seeks to serve Russ.  In addition to Russ' email address, the Commission has acquired three mailing addresses that Russ provided to his online brokers, as well as a mailing address he provided to the Latvian bank to which he wired the proceeds of his fraudulent trading.  See id. ¶ 8.  Two of the addresses are post office boxes in St. Petersburg, Russia, and two appear to be regular street addresses.  The most reliable address (other than the email address) would appear to be the mailing address Russ gave to the bank that housed Russ' illegal proceeds, as it is in the same small town

---

[5]      See http://www.kommersant.com/p-11944/Russ_SEC_fraud/ (Kommersant); http://www.themoscowtimes.com/stories/2008/01/18/061.html (Moscow Times); http://www.msnbc.msn.com/id/22689228/ (MSNBC); http://www.businessweek.com/ap/financialnews/D8U78KL80.htm (Business Week); http://biz.yahoo.com/ap/080116/sec_russian_trader.html?.v=1 (Yahoo).

listed on Russ' passport (Novaya Ladoga), located about 80 miles from St. Petersburg.
See id.

## ARGUMENT

Given that Russ is currently residing in Russia, in-person service by traditional means is not possible. Thus, the Commission seeks an Order allowing service on Russ by email, international courier (Federal Express), and international registered mail pursuant to Federal Rule of Civil Procedure 4(f)(3).

As shown below, these methods of service are those most likely to provide Russ with notice of this litigation, and are also consistent with the Federal Rules of Civil Procedure, and constitutional due process.

## I.    SERVICE UNDER FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3) IS APPROPRIATE.

Service of process of individuals in foreign countries is governed by Rule 4(f) of the Federal Rules of Civil Procedure. Under this rule, there are three basic methods of service. Rule 4(f)(1) allows for service by means agreed upon in international treaties such as the Hague Convention. Rule 4(f)(2) allows for service in the absence of an international agreement, permitting, among other things, service by personal delivery or by mail if addressed and dispatched by the clerk of court and if not contrary with the law of the target country.[6] Rule 4(f)(3) allows service "by other means not prohibited by

---

[6]    As shown below, because Russia has ignored the Hague Convention and publicly declared that it will not apply the convention to the United States, service under Rule 4(f)(2) may be appropriate in that there is, in effect, an "absence of international agreement." See Fed. R. Civ. P. 4(f)(2). Rule 4(f)(2) requires that the Court be the entity that effects mail service on the defendant. Russian domestic law would not prohibit service by Court mailing, as indeed, that is how service is handled under Russian law. See William Butler, Russian Law, Chap. 7, p. 232, (2d ed. 2003) (noting that to effect

international agreement as may be directed by the Court." While in some circumstances, more than one method may seem appropriate, no means of service is preferred to any other, and there is no need to exhaust any of the methods before seeking to serve under the others. See Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1014-15 (9th Cir. 2002) (allowing service by email to defendant residing in Costa Rica); see also Forum Fin. Group, LLC v. President & Fellows, No. 00-306, 2001 U.S. Dist. Lexis 5961 (D. Me. 2001). Here, the Commission seeks permission from the Court for alternative means of service – service by email, international courier, and international registered mail – under Rule 4(f)(3). As shown below, in light of the Russian government's position relating to international service of process, these methods of service are most likely to provide notice to defendant of the pending litigation and conform to the requirements of due process.

### A. Attempts to Serve Defendant Under the Hague Convention Pursuant to Rule 4(f)(1) Would be Futile.

The Hague Convention attempts to regularize a system for service of process in international civil suits. It was "intended 'to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of

---

service, "[t]he judge sends or hands over to the defendant copies of the petition to sue and appended documents supporting the demands of the plaintiff"); Hiroshi Oda, Russian Commercial Law, Chap. 15, p. 337 (2002) (noting that order to serve defendants, "the plaintiff merely has to submit copies [of the complaint] to the court for the latter to send them to the relevant people"). The Southern District of New York has established procedures for service pursuant to Rule 4(f)(2). See Instructions for Service of Process On a Foreign Defendant Pursuant FRCP (4)(f) and the Foreign Sovereign Immunities Act, attached as Exhibit C. If the Court, in light of all factors, believes this to be the most prudent approach, plaintiff would have no objection to having the Clerk of Court dispatch the international courier and international registered mail.

the addressee in sufficient time.'" <u>Burda Media, Inc. v. Viertel</u>, 417 F.3d 292, 303 (2d Cir. 1995) (citing Hague Convention, Preamble).[7]

The Hague Convention requires that, under most circumstances, service of individuals or entities in a foreign country that has signed the Hague Convention be accomplished by sending papers to be served to the receiving country's designated "Central Authority." <u>See</u> Hague Convention, Article 3. The Central Authority is then obligated to serve those papers on the defendant. <u>See</u> <u>id.</u>, Article 5.[8]

Both the United States and Russia are signatories to the Hague Convention. However, Russia refuses to comply with the treaty, or indeed, to recognize it is in effect with regard to the United States. Thus, service on a Russian citizen in Russia pursuant to the Hague Convention is impossible.

As explained in the attached affidavit from Edward Betancourt of the United States Department of State, "[i]n July 2003, Russia unilaterally suspended all judicial cooperation with the United States in civil and commercial matters." <u>See</u> Betancourt Declaration ¶ 9, Exhibit A.[9] Apparently, Russia's refusal to participate in service under the Hague Convention stems from its objections to fees imposed by the United States on service made here. <u>See</u> <u>id.</u> ¶ 9.

---

[7]     The Hague Convention is reproduced in its entirety following the advisory committee notes to Federal Rule of Civil Procedure 4.

[8]     The receiving country may impose certain requirements on the form of the service papers, but so long as the submitted papers meet those requirements, they are to be served by the designated Central Authority. <u>See</u> Hague Convention, Articles 2 & 3.

[9]     Mr. Betancourt is Director of the Office of Policy Review and Inter-Agency Liaison in the Directorate of Overseas Citizens of the Bureau of Consular Affairs. <u>See</u> Betancourt Declaration ¶ 1.

Thus, according to the State Department, "Russia refuses to serve letters of request from the United States for service of process presented under the terms of the 1965 Hague Convention or to execute letters rogatory transmitted via the diplomatic channel." Id. Instead, requests sent to "the Russian Central Authority under the Hague Service Convention are returned unexecuted." Id. ¶ 11.

**B.    Alternative Means Are Appropriate Here.**

It is well established that where service under the Hague Convention is unavailable, a Court is within its discretion to allow for alternative means of service.[10] In fact, by the very terms of the Hague Convention itself, even the mere passage of time is sufficient justification to ignore the Convention completely. The Advisory Committee Notes to Federal Rule of Civil Procedure 4 explain that under Article 15 of the Hague Convention, alternative means of service are available "if a Central Authority does not respond within six months." Advisory Committee Notes, Rule 4(f) (interpreting Hague Convention Article 15). Where a member-nation flatly refuses to comply with the treaty, alternative means are all the more appropriate. The Advisory Committee Notes acknowledge that "there have been occasions where the signatory state was dilatory or refused to cooperate for substantive reasons" and "[i]n such cases, resort may be had to the provision set forth in subdivision (f)(3)." Id. Here, based on Russia's stated refusal

---

[10]    As noted above, there is no requirement to exhaust other avenues of service such as those designated in Rule 4(f)(1) or (f)(2) before seeking alternative service under Rule 4(f)(3). See Rio Properties, 284 F.3d at 1014-15.

to participate in the Hague Convention, there is no question that it is "refus[ing] to cooperate for substantive reasons."[11]

Notably, a recent decision from another court in the Southern District of New York found alternative service under Rule 4(f)(3) appropriate when resort to Hague Convention procedures was futile.  See Swarna v. Al-Awadi, 06 Civ. 4880, 2007 U.S. Dist. Lexis 72661, at *1 (S.D.N.Y. Sept. 20, 2007).  In Swarna v. Al-Awadi, plaintiff needed to serve a Kuwaiti diplomat living in France – a signatory to the Hague Convention.  See 06 Civ. 4880, 2007 U.S. Dist. Lexis 72661, at *1 (S.D.N.Y. Sept. 20, 2007).  However, after plaintiff sent the Complaint to the designated French Central Authority, in accordance with the Hague Convention, France refused to serve the defendant, citing diplomatic immunity.  See id. at *3.  Based on this refusal, the Court, relying in part on the Advisory Committee Notes, held that plaintiff could serve defendant Al-Awadi through alternative means under Rule 4(f)(3) – by way of international courier.  See id. at *3-*5.[12]

Similarly, another Southern District of New York court also recently found that in light of Russia's refusal to recognize the requirements of the Hague Convention, "Court-directed service pursuant to Rule 4(f)(3) is warranted."  RSM Production Corp. v. Fridman, 06 Civ 11512, 2007 U.S. Dist. Lexis 37713, at * 4 (S.D.N.Y. May 24, 2007) (Cote, J.) (allowing service on defendants' U.S. counsel under Rule 4(f)(3)).

---

[11]    Given Russia's clear refusal to comply with the treaty, there is no reason why plaintiff should be required to send service to Russia's central authority and wait six months.  Compliance with the Hague Convention is clearly futile.

[12]    In the Swarna case, the Court first directed that the plaintiff attempt service pursuant to the Hague Convention.  Id. at *2.  But, here, given Russia's publicly stated position, and several year history of refusing to act on requests to effect service, there is no question that such an attempt would be futile in this case.

Given Russia's unqualified refusal to acknowledge the Hague Convention, alterative service under Rule 4(f)(3) is necessary.

## II.   SERVICE BY EMAIL, INTERNATIONAL COURIER, AND INTERNATIONAL REGISTERED MAIL SHOULD BE PERMITTED UNDER RULE 4(f)(3).

Under the circumstances of this case, alternative service pursuant to Fed. R. Civ. P. 4(f)(3) by way of email, international courier, and international registered mail should be permitted.  Federal Rule of Civil Procedure 4(f)(3) authorizes the Court to direct alternative means of effecting service on an individual in a foreign country so long as those means are (1) not prohibited by international agreement, and (2) meet the minimum requirements of due process.  See Fed. R. Civ. P. 4(f)(3).  Here, no international agreement prohibits service on Russ by these methods.  Moreover, service by these methods will be the most effective means of serving the defendant – indeed may be the only way, and each method easily satisfies the requirements of Rule 4(f)(3).  Thus, it is well within this Court's discretion to allow alternative service, and the Commission's application for alternative service should be granted.  See Brockmeyer v. May, 383 F.3d 798, 804 (9th Cir. 2004) (noting that "[t]he decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court) (internal quotation omitted).[13]

---

[13]      Under Rule 4(f)(3), so long as the chosen methods are not prohibited by international agreement and the methods satisfy due process requirements, the methods need not be permissible under Russian law.  See Rio Properties, 284 F.3d at 1014 ("[A]s long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country"); Nanya Tech. Corp. v. Fujitsu Ltd., No. 06-00025, 2007 U.S. Dist. Lexis 5754, at *14-*17 (D. Guam Jan. 26, 2007) (ordering alternative service of defendant in Japan while noting that the service laws of Japan are "of little consequence" to the Court's determination under Rule 4(f)(3)); Export-Import Bank v. Asia Pulp &

**A.  Service by Email, International Courier,
and International Registered Mail is not
Prohibited by International Agreement.**

Court directed alternative means of effecting service pursuant to Federal Rule of

Civil Procedure 4(f)(3) must not be prohibited by international agreement.  Here, no

international agreement between Russia and the United States prohibits service by email,

and Russia's conduct disavowing any international service agreement with the United

States makes clear that any restrictions imposed by the language of the Hague

Convention are simply not applicable vis-à-vis Russia.

Email service is not mentioned in the Hague Convention or any other

international agreement with Russia.  As such, there is no international agreement

prohibiting service by email.  See Williams-Sonoma Inc. v. Friendfinder Inc., No. C 06-

06572, 2007 U.S. Dist. Lexis 31299, at *5 (N.D. Cal. Apr. 17, 2007) (concluding that for

signatories to the Hague Convention, "service via email is not prohibited by an

international agreement"); Nanya Tech. Corp. v. Fujitsu Ltd., No. 06-00025, 2007 U.S.

Dist. Lexis 5754 (D. Guam Jan. 26, 2007) (affirming Magistrate Judge's decision

allowing service by email and international mail on defendant in Japan, signatory to

Hague Convention).

While nothing in the Hague Convention explicitly prohibits service by

international courier or by international mail, Article 10 does allow signatory nations a

Paper Co., Ltd., 03 Civ 8554, 2005 U.S. Dist. Lexis 8902, at *14 (S.D.N.Y. May 11,
2005) (sanctioning service by international courier to defendants in Indonesia "[e]ven if it
is technically in violation of Indonesian service requirements [because] any offense to
that country's sovereignty is minimal").  Of course, as noted above, service in Russia is
handled by the Court – usually by mail.  See supra n.6.  Nothing in Russian law expressly
prohibits service by email or by courier, and thus, even if Russian law were relevant to
the analysis under Rule 4(f)(3), it would not prevent service here.

mechanism to "object" to service by "postal channels."  <u>See</u> Hague Convention 10(a).

Russia has objected to such service.[14]  However, based on Russia's own declarations, that

objection should not bind the United States.

   In the same official declaration containing Russia's objections to service via

postal channels under Section 10, Russia made clear that it interprets Article 12 of the

Hague Convention to prohibit charging the serving party "costs for the services rendered

by the State addressed."  <u>See</u> <u>supra</u>, n.14.  It further noted that the "[c]ollection of such

costs . . . by any Contracting State shall be viewed by the Russian Federation as refusal to

uphold the Convention in relation to the Russian Federation, and, consequently, the

Russian Federation shall not apply the Convention in relation to this Contracting State."

<u>Id.</u>  As noted in the Betancourt affidavit, Russia believes that the United States is

inappropriately charging such costs for service in the United States.  <u>See</u> Betancourt

Affidavit ¶ 9, Exhibit A.  This is the reason that Russia has taken the position that it

"shall not apply the Convention in relation to [the United States]."  Indeed, as stated in

the U.S. Department of State Foreign Affairs Manual, Volume 7, "Russia does not

consider the Hague Service Convention to apply to the United States."[15]

   Given Russia's express refusal to apply the Hague Convention to the United

States, its objection under Section 10(a), similarly, should also not apply.  Russia cannot

explicitly declare that the Hague Convention does not apply to the United States and then

---

[14]  <u>See</u> Russian Federation Declarations to the Hague Convention, available at
http://www.hcch.net/index_en.php?act=status.comment&csid=418&disp=resdn, and
attached as Exhibit D.

[15]  <u>See</u> 7 FAM 950, Service of Process, p. 12 of 35, available at
http://www.state.gov/documents/organization/86743.pdf, a copy of which is attached as
Exhibit E.

expect that the United States will adhere to the conditions that Russia imposes on the operation of that treaty.

There is no question that if Russia had not signed the Hague Convention, service by courier or even international mail would be permissible pursuant to Rule 4(f)(3), as it would not be in contravention of any treaty.  See, e.g., Ehrenfeld v. Mahfouz, 04 Civ. 9641, 2005 U.S. Dist. Lexis 4741, at * 7-*8 (S.D.N.Y. Mar. 23, 2005) (allowing, among other things, service by ordinary mail to defendant's post office box in Saudi Arabia under Rule 4(f)(3), since Saudi Arabia is not a signatory to the Hague Convention). Moreover, as the United States Supreme Court has held, "one important objective of the convention is to provide means to facilitate service of process abroad." Volkswagonwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 704 (1988).  To allow Russia's refusal to honor a signed treaty to prevent service that would otherwise be valid would be in direct contravention of the very purpose of the Hague Convention.  It is nonsensical that the ability of the United States (and its citizens) to serve Russian citizens could have diminished through Russia's unilateral misconduct in ignoring a signed treaty designed to facilitate and ease service of process abroad.[16]

---

[16]    One recent court has held that Russia's objection to service by postal channels under the Hague Convention should be binding and prevents service by international courier (such as Federal Express).  See RSM Production, 2007 U.S. Dist. Lexis 37713, at * 4.  But that portion of the court's decision is simply incorrect.  In its decision, the Court correctly recognized that Russia "refus[ed] to recognize the requirements of the Hague Convention."  Id.  As a result, it noted that "Court directed service pursuant to Rule 4(f)(3) was warranted."  Id.  Thus, it allowed service by email upon one of the Russian defendants' U.S. based attorney.  However, it then inexplicably applied Russia's objection under Article 10 of the Hague Convention regarding service by "postal channels" and refused to allow service by international Federal Express.  The Court ignored its own finding that objections under Article 10 would only be effective if the Hague Convention was "in force between the United States and the Russian Federation."

Finally, even if this Court were to find that it needed to credit Russia's objection to Article 10, despite its refusal to abide by the treaty at all, that objection obviously has no bearing on email, and also should not prevent service by international courier. Arguably, objections to Article 10(a) apply only to "postal channels" such as international mail – not to international courier services such as Federal Express. See Ackerman v. Levine, 788 F.2d 830, 838-39 (2d Cir. 1986) (holding that Section 10(a)'s allowance to "send judicial documents by postal channels" allows service by "registered mail"); In re CINAR Corp. Secs. Litig., 186 F. Supp. 2d 279, 304 (E.D.N.Y. 2002) (questioning, without deciding, whether an international courier constituted a "postal channel" under the Hague Convention provisions for service). "The federal courts are split as to whether private courier services, such as Federal Express, constitute 'mail' as that term is used in the Federal Rules of Civil Procedure 4." Alu, Inc. v. Kupo Co., Case No. 6:06-cv-327-Orl-28DAB, 2006 U.S. Dist. Lexis 96138 (M.D. Fla. Dec. 15, 2006). Thus, service by international courier such as Federal Express under Rule 4(f)(3) here would be valid even if Russia's objection under the Hague Convention were given effect.

**B.    The Requested Alternative Service Satisfies Due Process.**

Courts have held that a wide variety of alternative methods of service meet the requirements of due process. Given the facts of this case, service by email, international courier, and international registered mail pursuant to Rule 4(f)(3) each satisfies those requirements.

Rule 4(f)(3) "was 'adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in

---

Id. at *5. Quite simply, as noted above, because Russia has declared that the treaty is not "in force," with regard to the United States, its objection should be disregarded.

foreign countries,' and what constitutes appropriate service will vary depending upon the particular circumstances of the case." Smith v. Islamic Emirate of Afghanistan, 01 Civ. 10132, 2001 U.S. Dist. Lexis 21712 (S.D.N.Y. Dec. 26, 2001) (quoting Broadfoot v. Diaz, 245 B.R. 713 (N.D. Ga. 2000)). As noted above, "[a] party 'need not have attempted every permissible means of service of process before petitioning the court for alternative relief.'" Ryan v. Brunswick Corp., 02-cv-0133E(F), 2002 U.S. Dist. Lexis 13837, at *7 (W.D.N.Y. May 31, 2002) (quoting Rio Properties, 284 F.3d at 1015). Rule 4(f)(3) is "neither 'extraordinary relief' nor a 'last resort' to be used only when parties are unable to effectuate service under subsections (f)(1) or (f)(2)." Id.[17]

Of course, any method of service authorized pursuant to Rule 4(f)(3) must comport with constitutional due process requirements. Due process requires that the method of service must be "reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1945). Under the circumstances of this case, each of the methods of service requested meets this standard.

There is no singular method of alternative service sanctioned by Rule 4(f)(3). See Rio Properties, 284 F.3d at 1017 ("To be sure, the Constitution does not require any particular means of service of process"). Courts have found that a wide variety of alternative means of service, including publication, ordinary mail, mail to the defendant's

---

[17]    Thus, even if the Court believes that service through the Hague Convention *could* be accomplished, the Court may still allow service under Rule 4(f)(3).

last known address, delivery to the defendant's attorney, telex, fax, and email.[18]  Courts

have also recognized that permissible methods of service may shift as technological

capabilities evolve.  See Rio Properties, 284 F.3d at 1117 (holding that with regard to due

process restrictions on service, "this broad constitutional principle unshackles the federal

courts from anachronistic methods of service and permits them entry into the

technological renaissance") (citing New Eng. Merchs., 495 F. Supp. at 80); Philip Morris

USA Inc. v. Veles Ltd., 06cv2988, 2007 U.S. Dist. Lexis 19780, at *8 (S.D.N.Y. Mar. 13,

2007) ("Federal courts have traditionally incorporated advances in telecommunications

technology to methods of notice giving."); Popular Enterprises, LLC, v. Webcom Media

Group, Inc., No. 3:03-cv-565, 2004 U.S. Dist. Lexis 26785, at *5 (E.D. Tenn. Nov. 16,

2004).

### 1.    Service by Email Satisfies Due Process.

Given the nature of Russ' internet fraud, and his reliance on email, email service

is very likely to provide notice of this action, and satisfies the due process requirements.

Where a defendant is a sophisticated party who uses email and the internet to engage in

wrongdoing, service by email is particularly appropriate.  See Rio Properties, 284 F.3d at

1118 (affirming decision finding service by email satisfied the due process clause where

defendant had "embraced the modern e-business model" and "designated its email

---

[18]    See SEC v. Tome, 833 F.2d 1086, 1094 (2d Cir. 1987) (publication); International
Controls Corp. v. Vesco, 593 F.2d 166, 176-78 (2d Cir. 1979) (mail to last known
address); FMAC Loan Receivables v. Dagra, No. 3:04cv701, 2005 U.S. Dist. Lexis
14223, at *7 (E.D. Va. June 10, 2005) (on foreign defendant's United States counsel);
Ryan v. Brunswick Corp., 02-cv-0133E(F), 2002 U.S. Dist. Lexis 13837, at *9-*10
(W.D.N.Y. May 31, 2002) (fax and/or email); Forum Fin. Group, 2001 U.S. Dist. Lexis
5961, at *2 (on foreign defendant's United States counsel); Broadfoot v. Diaz, 245 B.R.
713, 719-20 (N.D. Ga. 2000) (e-mail); Smith v. Islamic Emirate, 2001 WL 1658211
(S.D.N.Y. Dec. 26, 2001) (publication); New Eng. Merchs. Nat'l Bank v. Iran Power
Generation & Transmission Co., 495 F.Supp. 73, 80 (S.D.N.Y. 1980) (telex); Levin v.
Ruby Trading Corp., 248 F. Supp. 537, 541-44 (S.D.N.Y. 1965) (ordinary mail).

address as its preferred contact information"); <u>Williams v. Advertising Sex LLC</u>, No.
1:05cv51, 2005 U.S. Dist. Lexis 25670, at *11-*12 (allowing service by email where
defendants were "sophisticated participants in e-commerce"); <u>Ryan v. Brunswick Corp.</u>,
02-cv-0133E(F), 2002 U.S. Dist. Lexis 13837, at *7 (W.D.N.Y. May 31, 2002) (allowing
service by email, and finding that it was reasonably calculated to notify defendant of the
action where defendant "conducts its business through these means of
communication").[19]

Here, Russ perpetuated his entire fraud through the use of the internet and his
email account.  He used the same email address to set up each of his trading accounts,
and sent various emails to brokers to inquire as to the status of his accounts and to follow
up on his attempts to wire his ill-gotten gains to his Latvian bank account.  <u>See</u>
Thompson Affidavit ¶ 5, Exhibit. B.  He also requested to receive communications from
at least some of his brokers via email.  <u>See</u> <u>id.</u>

After Russ' fraudulent conduct was discovered, and his brokers froze his
accounts, email communications sent by at least one broker to Russ began "bouncing
back" as undeliverable.   While this initially suggested that Russ had possibly deactivated
his account, it now appears that instead Russ may have been using a filter to prevent
emails from that broker.  <u>See</u> <u>id.</u> ¶ 6.  Indeed, Russ' email account is apparently still
active, as the Commission sent a copy of the Complaint to plaintiff's email address on
January 23, 2008, and it has not "bounced back."  <u>Id.</u> ¶ 7.  As at least one Court has

---

[19]     Many other cases also have allowed service by email under Rule 4(f)(3).
<u>See, e.g.</u>, <u>Williams-Sonoma</u>, 2007 U.S. Dist. Lexis 31299, at *5; <u>Nanya Tech.</u>, 2007 U.S.
Dist. Lexis 5754; <u>Bank of Credit and Commerce Int'l Ltd. v. Tamraz</u>, 97 Civ 4759, 2006
U.S. Dist. Lexis 39256 (S.D.N.Y. June 13, 2006); <u>Viz Communications v. Redsun</u>, C-01-
04235, 2003 U.S. Dist. Lexis 26104, at *17 (N.D. Cal. Mar. 28, 2003).

recognized, when email does not "bounce back," it "presumably reached defendant." See Popular Enterprises, LLC, v. Webcom Media Group, Inc., No. 3:03-cv-565, 2004 U.S. Dist. Lexis 26785, at *5 (E.D. Tenn. Nov. 16, 2004). Thus, service by email is very likely to provide notice to Russ and easily satisfies due process requirements.

### 2.    Service by International Registered Mail or International Courier Service Also Satisfies Due Process.

As noted above, service by international registered mail or courier service is also appropriate. The United States Supreme Court has "repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice." Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 490 (1988); see also Mullane, 339 U.S. at 318 (rejecting statute allowing service by publication in all cases, when other more reliable methods, such like service by mail, were available); Int'l Shoe Co. v. Wash., 326 U.S. 310, 320 (1945). In the context of Rule 4(f)(3), the Second Circuit and other courts have specifically found that international registered mail satisfies due process. See Ackerman, 788 F.2d at 834; see also Nanya Tech. Corp. v. Fujitsu, Ltd., 2007 U.S. Dist. Lexis 5754 at *17 (D. Guam. Jan. 2, 2007) (granting motion to effect service by email and international mail on Japanese defendant).

As compared to the mails, courier service is all the more reliable and efficient, and not surprisingly courts have also allowed service under Rule 4(f)(3) by this method as well. See Swarna v. Al-Awadi, 06 Civ. 4880, 2007 U.S. Dist. Lexis 72661, at *1 (S.D.N.Y. Sept. 20, 2007) (granting motion allowing service of defendants in France by Federal Express); Pimentel v. Denman Inv. Corp., 2006 U.S. Dist. Lexis 89517, at *2-*3 (D. Colo. Dec. 8, 2006) (granting motion allowing service of defendants in Philippines

by Federal Express or DHL); Ehrenfeld v. Mahfouz, 04 Civ. 9641, 2005 U.S. Dist. Lexis
4741, at * 7-*8 (S.D.N.Y. Mar. 23, 2005) (finding service by Federal Express to
defendants' attorneys satisfied due process); EOI Corp. v. Med. Mktg. Ltd., No. 96-4961,
1997 U.S. Dist. Lexis 10668, at *32-*33 (D.N.J. Feb. 27, 1997) (finding that service by
DHL to defendant corporation's managing director's home in England was sufficient); R.
Griggs Group Limited v. Filanto Spa, 920 F. Supp. 1100, 1103 (D. Nev. 1996) (finding
service by Federal Express to defendant corporation's offices in Italy sufficient).

Here, service by international courier and international mail is reasonably
calculated to reach the defendant. The Commission has four addresses for Russ. The
most promising address is the street address that Russ used to open the bank account
where he wired his ill-gotten gains. First, there is a high likelihood of this address being
correct, as this account is where all of his ill-gotten gains were sent and thus he
presumably wanted to ensure continued access to that account. In addition, the address
Russ provided is in the same town listed on his passport – a small town of roughly 11,000
people outside of St. Petersburg. The other residential address the Commission has
appears to be an address located in another part of Russia. For both of these addresses,
international Federal Express is most appropriate. The two other addresses are post
office boxes Russ used to set up his trading accounts. While these boxes are located in
St. Petersburg, reasonably close to where the Commission believes Russ lives, and may
still be in use, international couriers do not deliver to post office boxes. Thus,
international registered mail is most appropriate to send to the post office boxes.

Finally, there are no other service options. Russ has no known representatives,
attorneys, or other agents living in the United States, or elsewhere. Under these

circumstances, it is clear that service on Russ by email, international courier, and

international registered mail, meets the due process requirements.

## <u>CONCLUSION</u>

For the reasons set forth above, the Commission's application for alternative

service should be granted.

Respectfully submitted,

_____S/_____
Amy J. Greer
Scott A. Thompson
Tami S. Stark (TS-8321)

Attorneys for Plaintiff

**SECURITIES AND EXCHANGE
COMMISSION**
Mellon Independence Center
701 Market Street, Suite 2000
Philadelphia, PA  19106
Telephone: (215) 597-3100
Facsimile: (215) 597-2740

Dated: February 4, 2008

# EXHIBIT A

**United States Department of State**

*Washington, D.C. 20520*

## DECLARATION OF EDWARD A. BETANCOURT

I, Edward A. Betancourt, hereby depose and say as follows:

1. I am the Director of the Office of Policy Review and Inter-Agency Liaison in the Directorate of Overseas Citizens Services ("OCS") of the Bureau of Consular Affairs in the United States Department of State. I make this declaration based on information available to me in my official capacity.

2. OCS is responsible, <u>inter alia</u>, for receiving and transmitting requests for international judicial assistance under 28 USC 1781 (See 22 CFR Section 92.67), as well as for other legal assistance requests that foreign States may make via the diplomatic channel to the United States, including those for which assistance may be available under 28 USC 1782.

3. Judicial assistance between the United States and the Russian Federation is governed by multilateral conventions to which the United States and Russia are parties: the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, 20 UST 361; and the Vienna Convention on Consular Relations ("VCCR"), 21 U.S.T. 77, as well as, customary international law; and applicable U.S. and local Russian law and regulations. The Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, 23 UST 2555, is not in force between the United States and the Russian Federation. Although the

Russian Federation acceded to the Hague Evidence Convention April 30, 2001, no Russian Central Authority has been established, and accordingly, the United States has not accepted Russia's accession.

4. Moreover, there are two bilateral agreements in force between the United States and the Russian Federation pertaining to judicial assistance. The Treaty on Mutual Legal Assistance in Criminal Matters, with related note, signed at Moscow June 17, 1999 entered into force January 31, 2001. Assistance under this agreement is available only to prosecutors. The other bilateral instrument is the Exchange of Notes Between the United States of America and the Union of Soviet Socialist Republics of November 22, 1935 on the Execution of Letters Rogatory, 49 Stat. 3840, and the supplementary letter of January 19, 1937 from the Vice Director of the Legal Division of the People's Commissariat for Foreign Affairs to the American Charge d'Affaires ad interim, 11 Bevan 1262-1267, publication 843, Executive Agreement Series No. 83.

5. The U.S. Department of State expects criminal defendants who wish to request judicial assistance in obtaining evidence or in effecting service of documents abroad in connection with criminal matters to make such requests pursuant to letters rogatory in accordance with Article 5(j) of the Vienna Convention on Consular Relations.

6.  Russian authorities do <u>not</u> recognize the authority or ability of foreign persons, such as American attorneys, to take voluntary depositions of willing witnesses, even before a U.S. consular officer.  In bilateral meetings held in Moscow in 2003 and 2004, Russian authorities reiterated this position and confirmed that this applies to both civil matters and defense requests in criminal matters.  There have been no bilateral meetings to discuss this matter since 2004.

7.  In view of this position, Russia has advised it would deem taking depositions in Russia before a U.S. consular officer as a violation of Russia's judicial sovereignty.  Such action could result in the arrest, detention, expulsion, or deportation of the American attorney.  A private U.S. defense attorney in a criminal case seeking assistance from Russia, or any foreign country, customarily submits a letter rogatory through the Department of State Directorate for Overseas Citizens Services, which then forwards the request through the diplomatic channel to the appropriate Russian authorities, 22 CFR 92.66, 7 Foreign Affairs Manual 931.  This procedure is explained in the "Preparation of Letters Rogatory" feature on the Department of State, Bureau of Consular Affairs Internet webpage.

8.  While Russia has insisted on exclusive use of letters rogatory, this vehicle has proven in practice to be unreliable.  To the best of our knowledge, no request for testimony pursuant to letters rogatory on behalf of the defense in a

criminal case, or in a civil case has been successfully executed in Russia in recent years.

9. In July 2003, Russia unilaterally suspended all judicial cooperation with the United States in civil and commercial matters. Russia refuses to serve letters of request from the United States for service of process presented under the terms of the 1965 Hague Convention or to execute letters rogatory transmitted via the diplomatic channel. Russia also declines to give consideration to U.S. requests to obtain evidence. The suspension relates to a fee imposed by the United States for service of documents under the Hague Service Convention.

10. The Department and the Russian Foreign Ministry have exchanged several diplomatic notes setting out our respective positions on the matter, and met twice in Moscow in 2003 and 2004 to explore ways to provide normal judicial cooperation.

11. While the Department of State is prepared to transmit letters rogatory for service or evidence to Russian authorities via the diplomatic channel, in our experience, all such requests are returned unexecuted. Likewise requests sent directly by litigants to the Russian Central Authority under the Hague Service Convention are returned unexecuted.

# United States of America



## DEPARTMENT OF STATE

### *To all to whom these presents shall come, Greetings:*

Certify That Edward A. Betancourt, whose name is subscribed to the document hereunto
ed, was at the time of subscribing the same Director, Office of Policy Review and Inter-Agency
n, Overseas Citizens Services, Bureau of Consular Affairs, Department of State, United States
rica, and that full faith and credit are due to his acts as such.

In testimony whereof, I, Condoleezza Rice, Secretary of State , have
hereunto caused the seal of the Department of State to be affixed and my
name subscribed by the Assistant Authentication Officer, of the said
Department, at the city of Washington, in the District of Columbia, this
sixth day of August, 2007.

*Condoleezza Rice*

Secretary of State

By *Tumesia C. Crawford*

Assistant Authentication Officer,
Department of State

*Issue    suant to CF    tate of*
*Sep    789, 1 Sta    9; 22*
*USC    22USC 26    USC*
*301;    C 1733 et.    USC*
*1443    LE 44 Fede    es of*
*Civil    ure.*

*This    ificate is not valid if it is removed or altered in any way whatsoever*

I declare under penalty of perjury that the foregoing is true and correct (28 USC 1746).


_Edward A. Betancourt_
Edward A. Betancourt

Executed in Washington, D.C.

August 3, 2007

# EXHIBIT B

AMY J. GREER
SCOTT A. THOMPSON
TAMI S. STARK (TS-8321)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
701 Market Street
Suite 2000
Philadelphia, PA 19106
Telephone: (215) 597-3100
Telefax: (215) 597-2740

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,     :
                                        :
                    Plaintiff,          :
                                        :
            v.                          :     Civ No. 08CV0415 (LBS)
                                        :
ANATOLY RUSS,                           :
                                        :
                    Defendant.          :

---

## DECLARATION OF SCOTT A. THOMPSON

I, Scott A. Thompson, hereby declare as follows:

1. I am employed as a Senior Trial Counsel in the Division of Enforcement of the United States Securities and Exchange Commission (the "Commission"). My primary duties include representing the Commission in federal court actions brought by it to enforce the federal securities laws, and representing the Division of Enforcement in administrative proceedings authorized by the Commission.

2.   In connection with my duties as Senior Trial Counsel, I am one of the attorneys assigned to represent the Commission in the above-captioned matter, and am familiar with the findings of the Commission's investigation relating to this matter.

3.   On January 16, 2008, the Commission filed a Complaint in the above-captioned matter, in which the Commission charges defendant Anatoly Russ with violations of the antifraud provisions of the federal securities laws.

4.   That same day, the Commission issued a "Litigation Release" detailing the allegations of the Complaint, and attaching a copy of the filed Complaint.  This Litigation Release (No. 20430) is available on the Commission's website, www.sec.gov.  See http://www.sec.gov/litigation/litreleases/2008/lr20430.htm.  Several online news sources, including at least two Russian news websites, kommersant.com, and themoscowtimes.com, as well as sources such as MSNBC, Business Week, and Yahoo, published articles concerning the filing of the Complaint.  See, e.g., http://www.kommersant.com/p-11944/Russ_SEC_fraud/ (Kommersant); http://www.themoscowtimes.com/stories/2008/01/18/061.html (Moscow Times); http://www.msnbc.msn.com/id/22689228/ (MSNBC); http://www.businessweek.com/ap/financialnews/D8U78KL80.htm (Business Week); http://biz.yahoo.com/ap/080116/sec_russian_trader.html?.v=1 (Yahoo).

5.   Shortly thereafter, on January 23, 2008, the Commission directly notified Russ of the pending litigation by sending him a copy of the Complaint via email.  The Commission's investigation revealed an email address that Russ had used to set up each of his online brokerage accounts used in perpetrating the fraud, to send various emails to brokers to inquire as to the status of his account, and to follow up on his attempts to wire

his ill-gotten gains to his Latvian bank account. The investigation also showed that Russ requested to, and received communications from, at least some of his brokers at this same email address.

6. After Russ' fraudulent conduct was discovered, and his brokers froze his accounts, email communications sent by at least one broker to Russ began "bouncing back." At the time, this suggested that Russ had deactivated his account or was using a filter to prevent emails from that broker from reaching him.

7. It now appears that Russ' email account remains active. The January 23, 2008 email to Russ sending him a copy of the Commission's Complaint and notifying him of this action has not "bounced back" as undeliverable.

8. In addition to determining Russ' email address, as a result of the investigation, the Commission has also acquired three mailing addresses that Russ provided to his online brokers, as well as an address he provided to the Latvian bank to which he wired the proceeds of his fraudulent trading. Two of the addresses are post office boxes in St. Petersburg, Russia, and two appear to be regular street addresses. The most reliable address (other than the email address) would appear to be the mailing address Russ gave to the bank that housed Russ' illegal proceeds, as it is in the same small town listed on Russ' passport (Novaya Ladoga), located about 80 miles from St. Petersburg.

I make this declaration pursuant to 18 U.S.C. § 1746 and declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge, information, and belief.

*Scott A. Thompson*
Scott A. Thompson

Attorney for plaintiff:

**SECURITIES AND EXCHANGE
COMMISSION**
Mellon Independence Center
701 Market Street, Suite 2000
Philadelphia, PA  19106
Telephone: (215) 597-3100
Facsimile: (215) 597-2740

Dated: February 4, 2008

EXHIBIT C

# INSTRUCTIONS FOR SERVICE OF PROCESS

## ON A FOREIGN DEFENDANT

## PURSUANT FRCP 4(f)

## AND THE FOREIGN SOVEREIGN IMMUNITIES ACT

Federal rule of Civil; Procedure 4(f)(2)(C)(ii)

Foreign Sovereign Immunities Act
28 U.S.C. §1608(a)(3)
28 U.S.C.§1608(a)(4)
28 U.S.C.§1608(b)(3)(B)

## Table of Contents

Page

US Postal Rules..................................................................................................................1

Foreign Mailing Fed-Ex or DHL.......................................................................................2

Rule 4(f)(2)(C)(ii)..............................................................................................................3

Postal Forms Examples for 4(f)(2)(C)(ii)..........................................................................4

Customs Form.....................................................................................................................5

Hague Convention Website.................................................................................................6

28 USC §1608(a)(3)............................................................................................................7

Postal Forms Examples for 28 USC §1608(a)(3)...............................................................8

28 USC §1608(a)(4)............................................................................................................9

Check list for 28 USC §1608(a)(4)...................................................................................10

Check list continued..........................................................................................................11

28 USC §1608(b)(3)(B).....................................................................................................12

Letter from the Administrative Office...............................................................................13

Letter continued.................................................................................................................14

*Revised 4/2/2007*

## **Rules set by the U.S. Post Office regarding foreign mailings**

1.  Do not use postage meter stamps.

2.  Leave more than the exact amount for the postal fee.

3.  Do not seal envelopes.

4.  Make sure there is <u>glue</u> on the pink return receipt
    (Postal Form 2865).

5.  Mailing labels are not accepted on foreign mailing
    envelopes.  Addresses must be typed or handwritten on the
    envelope.

6.  The following envelopes are Ineligible for Registered Mail:

    Mail presented in a padded envelope; envelope or mailer
    manufactured of spun-bonded olefin, such as Tyvek; plastic
    envelope or mailer; or envelope or mailer made of glossy-
    coated paper.

7.  Packages weighing more than four pounds must be split up
    according to post office regulations.

8.  Please check with your local Post Office for the appropriate
    customs forms as well as the most up to date forms.

    Overnight mail such as FedEx DHL, etc. is acceptable, as
    long as you are able to obtain a signed returned receipt.
    When you deliver the documents to the Clerk, simply include
    a FED-EX or DHL envelope and an addressed waybill with you
    account number.  Then later use the appropriate shipping
    company's website to print a tracking summary indicating
    that the package was delivered to its ultimate destination.
    Provide a copy of that tracking summary and cover letter to
    the Clerk as your Return of Service.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### FOREIGN MAILING

When you have to accomplish service overseas, either directly or through the U.S. Department of State, the Clerk strongly recommends you use FED-EX or DHL Express instead of the U.S. Postal Service. The U.S. Postal Service requirements for such service are complicated and if not followed to the letter will result in the return of a package to the sender, delaying its ultimate delivery. Using FED-EX or DHL, also avoids the necessity of giving the Clerk cash for postage.

When you deliver the documents to the Clerk, simply include a FED-EX or DHL envelope and an addressed waybill with your account number. Then later use the appropriate shipping company's website to print a tracking summary indicating that the package was delivered to its ultimate destination. Provide a copy of that tracking summary and a cover letter to the Clerk as your Return of Service.

If you have any questions, or would like a copy of our INSTRUCTIONS FOR SERVICE OF PROCESS ON A FOREIGN DEFENDANT, please see the secretary in the Clerk of Court's Office, Room 120.

-2-

PROCEDURES FOR SERVICE PURSUANT TO

RULE 4 (f) (2) (C) (ii)

For the office of the Clerk to serve a defendant pursuant to Rule 4(f)(2)(C)(ii) of the Federal Rules of Civil Procedure, we require that you furnish us with the following for each <u>case</u> involved:

(1)  A letter, addressed to the Clerk of Court, J. Michael McMahon, requesting that he serve specified documents pursuant to Rule 4(f)(2)(C)(ii) of the Federal Rules of Civil Procedure. Include in this letter both the name(s) and address(es) of the defendant(s) to be served.

(2)  One set of papers for each defendant to be served and one copy of the summons and set of papers (except for the complaint) being served on the defendant(s) for the Court file.

(3)  One envelope, sufficient to hold an entire set of papers, addressed to each defendant with the law firm's return address.

(4)  A pink return receipt card (Postal Service Form #2865) made out to the defendant being served with the return address of the Clerk of Court.  On the upper left hand corner of this card you must include both the case number and judge's initials.  [See example on page 4.]

(5)  A white return receipt (Postal Service Form #3806) made out to the defendant being served with the return address of the law firm.  [See example on page 4.]

(6)  A sum of money (cash only) sufficient for postage and registration and return receipt fees.  If the amount of money tendered is insufficient, you will be contacted and the documents will be held in our office (Room 120) until additional funds are received.  Money for each case must be kept separately.

All mailings are brought to the Post Office on Monday, Wednesday and Friday mornings at 9:00.  Papers submitted to the Clerk's Office for mailings must be brought in no later than 4:30 P.M. the previous day.  You may pick up the change from the amount tendered anytime after 11:A.M. on the day of mailing.

**NOTE: * The Hague Convention places restrictions on which countries may be served under this provision.  See page 6.**





The Clerk's Office <u>cannot</u> accept for service pursuant to FRCP 4(f)(2)(C)(ii) , for any documents that are addressed to a defendant in certain countries that are parties to the HAGUE CONVENTION.

For a definitive up to date information about countries objecting to service by mail (Article 10 a), see the <u>status table</u> of the <u>Hague Conference on Private International Law Hague Service Convention</u> web page and review the reservations and declarations for each country.

The web site for the Status table is as follows:


http://www.hcch.net/index_en.php?act=conventions.text&cid=17


The text of the Hague Convention can be found in Martindale Hubbell (Volume VII) and following Rule 4 of the Federal Rules of Civil Procedure (United states Code Annotated version). Additional information may be obtained from the State Department's Office of Special Consular Services in Washington, D.C.

PROCEDURES FOR SERVICE
UPON A FOREIGN STATE OR POLITICAL SUBDIVISION
PURSUANT TO THE FOREIGN SOVEREIGN IMMUNITIES ACT
(DIRECT MAIL)

For the office of the Clerk to serve an agency or instrumentality of a foreign state pursuant to the Foreign Sovereign Immunities Act., 28 USC §1608 (a)(3), we require that you furnish us with the following for each <u>case</u> involved:

(1) A letter, addressed to the Clerk of Court, J. Michael McMahon, requesting that he serve specified documents pursuant to the Foreign Sovereign Immunities Act, 28 USC §1608 (a)(3). Include in this letter both the name(s), title(s) and address(es) of the person(s) to be served.

(2) One complete set of papers in English and one in that country's official language for each defendant to be served and one copy of each of these documents (except for the English complaint)for the Court's file.  You must also include a Notice of Suit (in both English and the country's official language) which must be prepared pursuant to 22 CFR §93.2.  a copy of these documents must also be tendered to the Clerk's Office along with the other papers mentioned in this paragraph.

(3) An affidavit from the translator stating his qualifications and that the translation is accurate [Rule 2101(b), Civil Practice Law and Rules of N.Y.] for each defendant to be served and one for the Court's file.

(4) A pink return receipt card (Postal Service Form #2865) made out to the defendant being served with the return address of the Clerk of Court.  On the upper left hand corner of this card you must include both the case number and judge's initials.  [See example on page 8.]

(5) A white return receipt (Postal Service Form #3806) made out to the defendant being served with the return address of the Clerk's Office.  [See example on page 8.]

(6) A sum of money (cash only) sufficient for postage and registration and return receipt fees.  If the amount of money tendered is insufficient, you will be contacted and the documents will be held in our office (Room 120) until additional funds are received.  Money for each case must be kept separately.

All mailings are brought to the Post Office on Monday, Wednesday and Friday mornings at 9:00.  Papers submitted to the Clerk's Office for mailings must be brought in no later than 4:30 P.M.  You may pick up the change from the amount tendered anytime after 11:00 A.M.



–8–

PROCEDURES FOR SERVICE
UPON A FOREIGN STATE OR POLITICAL SUBDIVISION
PURSUANT TO THE FOREIGN SOVEREIGN IMMUNITIES ACT
(DIPLOMATIC CHANNELS VIA STATE DEPARTMENT)

For the office of the Clerk to serve an agency or instrumentality of a foreign state pursuant to the Foreign Sovereign Immunities Act, 28 USC §1608 (a)(4), we require that you furnish us with the following for each <u>case</u> involved:

(1) A letter, addressed to the Clerk of Court, J. Michael McMahon, requesting that he serve specified documents pursuant to the Foreign Sovereign Immunities Act, 28 USC §1608(a)(4). You must indicate what measures have been employed to effect service under (a)(1)-(3), e.g., that (a)(3) was attempted by the Clerk's Office on a specified date which was more than 30 days prior to this request and the return receipt has not been received by the Clerk's Office. Include in this letter both the name(s), title(s) and address(es) of the person(s) to be served.

(2) Two complete set of papers in English and two in that country's official language for each defendant to be served and one copy of each of these documents (except for the English complaint) for the Court's file. You must also include two copies, each, of the Notice of Suit (in both English and the country's official language) which must be prepared pursuant to 22 CFR §93.2. A copy of these documents must also be tendered to the Clerk's Office along with the other papers mentioned in this paragraph.

(3) An affidavit from the translator stating his qualifications and that the translation is accurate [Rule 2101(b), Civil Practice Law and Rules of N.Y.] for each defendant to be served and one for the Court's file.

(4) A green return receipt card (Postal Form 3811) which the Clerk's Office will address. The return address should be made out to the Clerk of the Court. On the upper left-hand corner of this card include the case number and the Judge's initials.

(5) A sum of money (cash only) sufficient for postage and certification and return receipt fees. If the amount of money tendered is insufficient, you will be contacted and the documents will be held in our office (Room 120) until additional funds are received. Money for each case must be kept separately.

-9-

# Checklist for Plaintiffs Service of Process upon a Foreign State

*8/14/03*

The U.S. Department of State is charged, under the Foreign Sovereign Immunities Act (FSIA), with handling service of process upon a foreign state or political subdivision through diplomatic channels. The Act specifies that when service of process upon a foreign state cannot otherwise be effected under FSIA, the clerk of court may dispatch a request to the **Secretary of State, attn: Director of Special Consular Services,** for service upon a foreign state defendant.

To avoid confusion and common mistakes, please take note of the following items before submitting a request for service under FSIA 1608(a)(4).

1. The defendant must be a foreign state or political subdivision, as defined in section 1603 of the Act, not an agency or instrumentality of a foreign state (to be served under section 1608(b) of the Act). The U.S. Department of State does not serve **natural persons** under the FSIA.

2. The Act allows for service under FSIA 1608(a)(4) only **after 30 days have passed** since service was attempted under section 1608(a)(3) (by any form of mail requiring a signed receipt). The U.S. Postal service and private courier services can deliver documents to virtually any location. Plaintiffs should attempt service under FSIA 1608(a)(3) unless a foreign state has specifically objected to service by mail. [1]

3. The documents must be **translated** into the official language of the foreign state to be served.

4. The summons sheet and the notice of suit should state a **60 day** (not 20 day) response time for the defendant.

5. The notice of suit (or default) should conform to the requirements of **22 CFR 93.2** (the statute specifically refers to notice of suit "in a form prescribed by the Secretary of State by regulation"). The notice of suit must contain a copy of the FSIA.

6. The Act requires plaintiff to have first attempted service under sections FSIA 1608(a)(1), (2) and (3) before proceeding to section 1608(a)(4). Thus, the U.S. Department of State requires a **statement in writing** from the plaintiff or the clerk certifying that these attempts were made or were otherwise not applicable.

-10-

7. There should be two copies of either (a) the summons, complaint and notice of suit or (b) a default judgment and notice of default (depending on the request).

8. In cases involving allegations of terrorism, plaintiffs should refer to section 1605(a)(7)(B) regarding arbitration requirements (however, we defer to the court as to the adequacy of any action taken by the plaintiffs in fulfillment of this requirement).

9. The Act requires the clerk of court dispatch the documents; however, a plaintiff may **provide written confirmation** that the court allowed plaintiff to act for the Clerk (after docketing).

10. The Director of Special Consular Services is presently, Edward A. Betancourt. All requests for FSIA 1608(a)(4) service of process should be addressed to:

    **Courier service:** Edward A. Betancourt, Director of Special Consular Services, U.S. Department of State, **2100 Pennsylvania Ave., NW 4FL (SA-29) Washington, DC 20520, tel. 202-736-9110**

    **Regular Mail:** Edward A. Betancourt, Director, CA/OCS/PRI **(SA-29)**, U.S. Department of State, Washington, DC 20520 (note, delays continue due to anthrax screening).

11. The U.S. Department of State does not normally serve on a foreign state any documents not specifically mentioned in the Act; however, it reserves executive authority to communicate with foreign governments. Note, a default judgment does **not** include a document(s) directing further hearings on a judgment.

12. As of June, 2002, the U.S. Department of State charges, in accordance with 22 CFR 22.1, a **$650 fee** (cashiers check/ money order should be made out to the U.S. Embassy or Consulate involved).

13. Clerks who may have further questions regarding these issues may wish to refer to memos from the Administrative Office of U.S. Courts, dated, Nov. 7, 2000, May 20, 1982 and Nov. 6, 1980.

---

[1] Presently: Argentina, Bulgaria, China, Czech Republic, Egypt, Germany, Greece, Kuwait, Latvia, Lithuania, Luxembourg, Mexico, Norway, Poland, Russian Federation, Republic of South Korea, San Marino, Slovak Republic, Sri Lanka, Switzerland, Turkey, Ukraine, Venezuela.

Source: http://www.travel.state.gov/law/info/judicial/judicial_685.html

PROCEDURES FOR SERVICE
UPON AN AGENCY OR INSTRUMENTALITY OF A FOREIGN STATE
PURSUANT TO THE FOREIGN SOVEREIGN IMMUNITIES ACT

For the office of the Clerk to serve an agency or instrumentality of a foreign state pursuant to the Foreign Sovereign Immunities Act, 28 USC §1608(b)(3)(B), we require that you furnish us with the following for each case involved:

(1) A letter, addressed to the Clerk of Court, J. Michael McMahon, requesting that he serve specified documents pursuant to the Foreign Sovereign Immunities Act, 28 USC §1608(b)(3)(B). Include in this letter both the name(s), title(s) and address(es) of the person(s) to be served.

(2) One complete set of papers in English and one in that country's official language for each defendant to be served and one copy of each of these documents (except for the English complaint) for the Court's file.

(3) An affidavit from the translator stating his qualifications and that the translation is accurate [Rule 2101(b),Civil Practice Law and Rule of N.Y.] for each defendant to be served and one for the Court's file.

(4) A pink return receipt card (Postal Service Form #2865) made out to the person being served with the return address of the Clerk of Court.  On the upper left hand corner of this card you must include both the case number and judge's initials.  [See example on page 8.]

(5) A white return receipt (Postal Service Form #3806) made out to the defendant being served with the return address of the Clerk's Office. [See example on page 8.]

(6) A sum of money (cash only) sufficient for postage and registration and return receipt fees.  If the amount of money tendered is insufficient, you will be contacted and the documents will be held in our office (Room 120) until additional funds are received.  Money for each case must be kept separately.



LEONIDAS RALPH MECHAM
*Director*

CLARENCE A. LEE, JR.
*Associate Director*

## ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS

WASHINGTON, D.C. 20544
November 7, 2000

MEMORANDUM TO ALL CLERKS, UNITED STATES DISTRICT COURTS

SUBJECT:    Service of Process in Foreign Countries (INFORMATION)

The Department of State has informed us that they have received a note of protest from the Russian Federation objecting to service of process by mail. This protest differs from those noted in earlier communications on this subject (memoranda dated May 23, 1990, May 20, 1982, and November 6, 1980) in that it concerns service upon a foreign state, not service upon a private entity located within the foreign state. This memorandum will provide information on foreign service of process in both situations.

### Service on Foreign Governments

Rule 4(j)(1) of the Federal Rules of Civil Procedure provides for service of process on a foreign state pursuant to 28 U.S.C. § 1608. That section permits service by mail on foreign states, but section 1608(c) requires that for mail service to be effective, the postal receipt must be signed and returned. The State Department has advised that a number of countries, which are listed below, object to service by mail. If mail service is attempted in these countries, it could not only create diplomatic and foreign relations problems with those countries but also jeopardize the effectiveness of the service. Thus, even when a receipt is executed in a country that has objected to mail service, it is arguably executed without authority.

Accordingly, clerks should advise counsel who request their assistance with service by mail on countries included in the list below that service should instead be attempted under section 1608(a)(4), which is service through diplomatic channels. Normally, for service under this section, the State Department first requires evidence of attempted service by the means authorized in subsections 1608(a)(1), (a)(2), and (a)(3). The Department advises, however, that for countries which have protested service by mail, it will not require a showing that service has been attempted under (a)(3).

A TRADITION OF SERVICE TO THE FEDERAL JUDICIARY

Service of Process in Foreign Countries                                    Page 2

<u>Service on Private Parties</u>

With respect to service on private parties, clerks should recall that the 1993 amendments to the Federal Rules of Civil Procedure amended the provisions for service upon an individual in a foreign country. Service by mail, to be addressed and dispatched by the clerk, is permitted by F.R.Civ.P. 4(f)(2)(C) "unless prohibited by the law of the foreign country." Accordingly, clerks should refrain from effecting service by mail addressed to those countries who have protested such service or who have entered reservations to mail service under Article 10(a) of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters.

The following countries have objected to mail service in accordance with Article 10(a) of the Convention:

| | |
|---|---|
| China | Czech Republic |
| Egypt | Germany |
| Greece | Republic of South Korea |
| Latvia | Luxembourg |
| Norway | Poland |
| Slovak Republic | Switzerland |
| Turkey | Venezuela |

The State Department has also received notification from the governments of the following two countries, who are not parties to the Convention, that they object to service by mail:

Kuwait
Russian Federation

The State Department suggests that countries that have objected to mail service on private parties also object to mail service on the state itself, so the same list is applicable to both situations.

Additional information about service of process abroad is available from the Department of State web site at http://travel.state.gov/judicial_assistance.html. This includes Department of State circulars, "Service of Process Abroad," "Service Provisions of the Foreign Sovereign Immunities Act," "Operation of the Hague Service Convention," "Operation of the Inter-American Convention on Service," and "Preparation of Letters Rogatory."

Leonidas Ralph Mecham

cc:    Chief Judges, United States District Courts

—14—

# EXHIBIT D

Details

Reservations Declarations

Articles: 2,3,5,6,8,9,10,12,15

(Click here for the Central Authority designated by the Russian Federation and other practical information)

Text of the declarations:

"In conformity with Article 21 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters of 15 November 1965 (hereinafter referred to as the Convention) the Russian Federation thus informs the Ministry of Foreign Affairs of the Kingdom of Netherlands of the following.

I. The Ministry of Justice of the Russian Federation is designated as the Central Authority for the purposes of Article 2 of the Convention, as well as the authority competent to receive documents transmitted by consular channels, pursuant to Article 9 of the Convention.

Contact details: click here.

II. The following authorities are competent to forward requests in accordance with Article 3 of the Convention:
– Federal courts (the Constitution Court of the Russian Federation; the Supreme Court of the Russian Federation; the supreme courts of Republics, the courts of Krai (Territory) and Oblast (Region), the courts of cities of federal importance (Moscow and St. Petersburg), the courts of Autonomous Oblast and Autonomous Okrug, regional courts, military and specialized courts, which form the system of federal courts of common jurisdiction; The Higher Arbitration Court of the Russian Federation, federal arbitration courts of Okrug (arbitration cassation courts), arbitration appellate courts, arbitration courts of the subjects of the Russian Federation, which form the system of federal arbitration courts), constitutional (charter) courts and Justices of the Peace of the subjects of the Russian Federation;
– Federal bodies of executive power and bodies of executive power of the subjects of the Russian Federation;
– The Procurator's Office of the Russian Federation;
– Civilian registry offices;
– Notaries and other officials authorised to perform notary functions;
– Guardianship and trusteeship bodies;
– Members of advocacy.

III. Pursuant to the third paragraph of Article 5 of the Convention documents to be served within the territory of the Russian Federation shall only be accepted if they have been written in, or translated into, the Russian language. Forms of the request for service, the certificate of service, and the document summary (with standard terms translated into Russian) are attached. Filling the blanks in Russian is most appreciated.

IV. It is highly desirable that documents intended for service upon the Russian Federation, the President of the Russian Federation, the Government of the Russian Federation, the Ministry of Foreign Affairs of the Russian Federation are transmitted through diplomatic channels, i.e. by Notes Verbales of diplomatic missions of foreign States accredited in the Russian Federation.

V. Pursuant to Article 8 of the Convention, diplomatic and consular agents of foreign States are not permitted to

effect service of documents within the territory of the Russian Federation, unless the document is to be served upon a national of the State in which the documents originate.

VI. Service of documents by methods listed in Article 10 of the Convention is not permitted in the Russian Federation.

VII. Certificates of service provided for by Article 6 of the Convention are completed and countersigned by the courts of the Russian Federation which directly execute requests for service of documents.

VIII. The Russian Federation assumes that in accordance with Article 12 of the Convention the service of judicial documents coming from a Contracting State shall not give rise to any payment or reimbursement of taxes or costs for the services rendered by the State addressed. Collection of such costs (with the exception of those provided for by subparagraphs a) and b) of the second paragraph of Article 12) by any Contracting State shall be viewed by the Russian Federation as refusal to uphold the Convention in relation to the Russian Federation, and, consequently, the Russian Federation shall not apply the Convention in relation to this Contracting State.

IX. In accordance with the legislation of the Russian Federation the courts of the Russian Federation may give judgments pursuant to the second paragraph of Article 15 of the Convention."

Copyright © Hague Conference on Private International Law. All Rights Reserved.

# EXHIBIT E

# 7 FAM 950
# SERVICE OF PROCESS

*(CT:CON-187;   09-11-2007)*
*(Office OF Origin:  CA/OCS/PRI)*

# 7 FAM 951  AUTHORITY

*(CT:CON-127;   01-26-2006)*

a.  The Federal law governing service of process in civil cases is found in Rule 4, Federal Rules of Civil Procedure, Rule 4(f)(1) F.R.Cv. P. (28 U.S.C. Appendix Rule 4).

---

**(f) Service Upon Individuals in a Foreign Country.**

Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in a place not within any judicial district of the United States:

(1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or

(2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:

(A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or

(B) as directed by the foreign authority in response to a letter rogatory or letter of request; or

(C) unless prohibited by the law of the foreign country, by

(i) delivery to the individual personally of a copy of the summons and the complaint; or

(ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served; or

(3) by other means not prohibited by international agreement as may be directed by the court.

---

b.  **Consular Role**:  Usually, the consular officer becomes involved in

service of process requests in the following situations:

(1) **General Information**:  Referring inquirers to the Department of State, Bureau of Consular Affairs Internet web page judicial assistance feature;

(2) **Notarial for Service by an Agent**:  Administering an oath or affirmation (7 FAM 850) for an affidavit of service by a private agent when service of process is accomplished by an agent in the foreign country such as an attorney or process server.  (See 7 FAM 953.4);

(3) **Notarial for Waiver of Service**:  Providing a notarial service when the person to be served executes an acknowledgment or affidavit on a voluntary waiver of service before a consular officer.  (See 7 FAM 953.3 and 7 FAM 840);

(4) **Letters Rogatory**:  (See 7 FAM 953.6).  Transmitting a letter rogatory to the Foreign Ministry of the host country under cover of a diplomatic note when service is attempted pursuant to a letter rogatory (28 U.S.C. 1696; 22 CFR 92.54). Letters rogatory are forwarded to the U.S. embassy by the Department (CA/OCS/ACS) or forwarded directly by the requester.  7 FAM 953 provides a description of a variety of methods used to serve process abroad.  Letters rogatory are also used for service of documents under the Foreign Sovereign Immunities Act (FSIA) (28 U.S.C. 1608) on an agency or instrumentality of the foreign government.  Such cases are transmitted to posts by CA/OCS/PRI, which is responsible for the service provisions of the FSIA.  (See 7 FAM 955).

c. **Prohibition against Service of Process by U.S. Foreign Service Officers**:  Foreign Service officers are prohibited by Federal regulations (22 CFR 92.85) from serving process on behalf of private litigants or appointing others to do so, state law notwithstanding, unless directed by the Department.  Such authorization is extremely rare, and requires authorization by CA and L/CA.  Questions about the prohibition should be directed to CA/OCS/PRI (ASKPRI@state.gov).  7 FAM 954 provides information on service of subpoenas by consular officers pursuant to 28 U.S.C. 1783; 22 CFR 92.86.

# 7 FAM 952  PROVISO ON VIOLATIONS OF JUDICIAL SOVEREIGNTY

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

*(CT:CON-127;   01-26-2006)*

Certain countries have informed the Department that some methods of service constitute violations of their judicial sovereignty.  On November 7, 2000, the Department of State notified the Administrative Office of U.S. Courts of the expressed concerns of these countries to service by mail.  See the Department of State Internet page, Office of the Legal Adviser, Digest of International Law feature.  See Memorandum of the Administrative Office of the U.S. Courts (November 6, 1980) at Cumulative Digest of United States Practice in International Law, 1981-1988, Department of State, Office of the Legal Adviser, 1447 (1994).  (See 7 FAM 953.5 Service by Mail).

# 7 FAM 953  METHODS OF SERVICE OF PROCESS

## 7 FAM 953.1  Threshhold Question – Is Eventual Enforcement of a U.S. Judgment in the Foreign Country Foreseen?

*(CT:CON-127;   01-26-2006)*

If eventual enforcement of a U.S. judgment abroad is envisioned, requesters are advised to consult foreign legal counsel very early in the process of the U.S. legal proceeding, long before any judgment is rendered, before counsel begin filing the complaint, serving process, discovery, trial, etc.  This may help ensure that the foreign requirements for enforcement are not inadvertently violated in the U.S. action.  In countries whose laws do not provide for other methods of service, letters rogatory may be the only method of service if enforcement is anticipated.  (See 7 FAM 953.5 Service by Mail).

## 7 FAM 953.2  Service By Publication

*(CT:CON-127;   01-26-2006)*

Service by publication may also be a viable option; however, this may not be a valid method of service under the laws of the foreign country.  If enforcement of a U.S. judgment in a foreign country is anticipated, local foreign counsel or American foreign legal consultants abroad should be consulted before proceeding with such a method of service.

## 7 FAM 953.3  Waiver Of Service

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

*(CT:CON-127;   01-26-2006)*

Waiver of service (Rule 4(d) F.R.Cv.P.) may also be a viable option; however, this may not be a valid method of service under the laws of the foreign country. If eventual enforcement of a U.S. judgment in a foreign country is foreseen, it may be prudent to consult local foreign counsel or U.S. legal consultants abroad before proceeding with such a method of service.  Waivers of service may be executed before a U.S. consular official abroad in the form of an acknowledgment or affidavit. See the Bureau of Consular Affairs Internet page about notarial and authentication services abroad. (See 7 FAM 840 and 7 FAM 850).

# 7 FAM 953.4  Service By Agent

*(CT:CON-127;   01-26-2006)*

a. If personal service is desired in countries which are not party to the Hague Service Convention, the most expeditious method may be to retain the services of a local foreign attorney or process server. Rule 4(f)(2)(C) Federal Rules of Civil Procedure provides for personal service unless prohibited by the laws of the foreign country.  The attorney (or agent) can execute an affidavit of service at the nearest U.S. embassy or consulate, or before a local foreign notary which can be authenticated, either with an apostille for countries party to the Hague Legalization Convention, or by a U.S. consular officer at a U.S. Embassy abroad.  See the CA Internet web page guidance about notarial and authentication services.

b. **Validity of Service**:  The court in the United States where the U.S. action is pending will determine if service is valid for the purposes of U.S. state or federal law.  However, the laws of the foreign State may not recognize service by agent as valid.  Because service by agent is not recommended in cases where the enforcement of a judgment may be attempted later, interested parties should consult their local (foreign) attorneys about using this method.

c. **Permissability of Notarial Service for Affidavit of Service**: The Department (CA/OCS/PRI and L/CA) have determined that provision of a routine notarial service in the form of administration of an oath by a consular officer to a private individual who effected personal service of documents on a person in the foreign country, is permissible, notwithstanding a declaration or reservation by a country party to the Hague Service Convention about the exclusive use of a particular method of service.  Challenges to the validity of service may be raised should eventual enforcement of a U.S. state or federal judgment be attempted in the foreign country.

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

# 7 FAM 953.5  Service by International Registered Mail

*(CT:CON-187;  09-11-2007)*

a. Registered mail, with return receipt requested, may be sent to most countries of the world.  The U.S. Postal Service's instructions on international registered mail give detailed information on mail service in most foreign jurisdictions.  (Rule 4(f)(2)(C)(ii) F.R.Cv.P.) registered or certified mail, return receipt requested may be sent to most countries in the world.  Rule 4(f)(2)(C) provides that this method of service may be used unless prohibited by the law of the foreign country. **(see discussion below regarding treaty obligation to refrain from this method of service in certain countries.)**  To ascertain whether such mail service exists in a foreign state, requesters may contact their local U.S. Post Office to review the International Mail Manual and consult the business section on international mail of the U.S. Postal Service web page for general information, or contact the Government Printing Office.

b. American courts have held that formal objections to service by mail made by countries party to a multilateral treaty or convention on service of process at the time of accession or subsequently in accordance with the treaty are honored as a treaty obligation, and litigants should refrain from using such a method of service.

c. The following countries objected to the provisions of Article 10 of The Hague Service Convention regarding service via postal channels. Service by international mail should not be attempted in these countries.  (See 7 FAM 953.4).

---

**Note**:  Service by registered mail **should not be used** in the following countries which notified the treaty repository that it objected to the method described in Article 10(a) (postal channels):

Argentina

Bulgaria

China, PRC

*Croatia*

Czech Republic

Egypt

Germany

Greece

---

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

Hungary

*India*

Japan

Korea

Kuwait

Lithuania

Mexico

Norway

Poland

Russian Federation

San Marino

Seychelles

Slovak Republic

Sri Lanka

Switzerland

Turkey

Ukraine

Venezuela

These countries have notified the Hague Conference on Private International Law and the Government of the Netherlands (the repository) on accession, ratification or subsequently that they object to service in accordance with Article 10, sub-paragraph a of the Convention, via postal channels.

For a definitive up to date information about countries objecting to service by mail (Article 10 a), see the status table of the Hague Conference on Private International Law Hague Service Convention web page and review the reservations and declarations for each country.

d. **Note about Japan**:  Japan did not object to the provisions of Article 10(a) of the Convention on accession.  However, subsequently, Japan provided a clarification of its position on the subject to the Hague Conference on Private International Law. While Japan does not formally object to service by postal channels, it may not recognize the method of service when enforcement of a foreign (U.S.) judgment is attempted.  At a meeting of The Hague Conference on Private International Law Special Commission April

17-20, 1989 the Japanese delegation issued a statement regarding service by postal channels. See 28 Int'l Leg. Mat. 1556 (1989) and Hague Service Convention Practical Handbook, 1992 ed., p. 134. See the Service of Process in Japan feature on the Department of State, Bureau of Consular Affairs Internet page and Japan's response to the 2003 Questionnaire of the Hague Conference on Private International Law in preparation for the 2003 Special Commission on the Practical Operation of The Hague Service Convention.

# 7 FAM 953.6  Service by Letter Rogatory

*(CT:CON-187;  09-11-2007)*

A letter rogatory, also known as a "letter of request", is a request from a court in the United States to a court in a foreign country requesting international judicial assistance.  In some countries service by letters rogatory is the only recognized method of service.  Service of process by judicial authorities in the receiving State pursuant to a letter rogatory from a court in the sending State is based on comity. Procedural requirements vary from country to country.  See the Bureau of Consular Affairs web page guidance on "Preparation of Letters Rogatory", and our country-specific flyers for any peculiarities of particular countries, or consult the appropriate geographic division of the U.S. Department of State, Bureau of Consular Affairs, Office of American Citizens Services (CA/OCS/ACS).  Letters rogatory are also used for compulsion of evidence.  7 FAM 930.28 provides a more extensive discussion about letters rogatory.  28 U.S.C. 1696 and Rule 4(f)(1) F.R.Cv. P. (28 U.S.C. Appendix Rule 4) and Rule 9(c) provide for service of process pursuant to a letter rogatory.  *7 FAM Exhibit 953.6 A provides sample language to be used in transmitting a letter rogatory through the diplomatic channel.  7 FAM 953.5 B provides a sample Certificate Returning an Executed Letter Rogatory.*

# 7 FAM 953.7  Multilateral Conventions on Service

*(CT:CON-187;  09-11-2007)*

a. **Summary:**  The United States is a party to two multilateral treaties on service of process, the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters (Hague Service Convention) (20 U.S.T. 1361; 658 U.N.T.S. 163, T.I.A.S. No. 6638; 28 U.S.C.A.) (Appendix following Rule 4 FRCvP) and the Inter-American Convention on Letters Rogatory

(Inter-American Service Convention) and Additional Protocol. Procedures for service under these treaties are summarized below, and explained in greater detail in the Department of State, Bureau of Consular Affairs Internet web pages about the operation of the conventions.  For questions regarding requests from foreign States for service of documents in the United States, (see 7 FAM 963).

b. **Consular Role**:  If a requesting party encounters problems in dealing with the central authority of the host government in a country which is party to either convention, the consular officer may be requested to make appropriate inquiries of that central authority about the cause of the difficulty.  Therefore, consular officers should attempt to establish rapport with the foreign central authorities and maintain the current name and address of the foreign central authority in countries where the conventions are in force.

c. **U.S. Central Authority**:  The U.S. Central Authority for both conventions is the Office of International Judicial Assistance, also known as the Office of Foreign Litigation.

(1)    Contact information for the U.S. Central authority is:

Office of International Judicial Assistance
Civil Division, Department of Justice
1100 L St. N.W.
Room 11006
Washington, DC 20530

tel: 202) 307-0983
fax: (202) 514-6584.

(2)    On June 1, 2003, the U.S. Department of Justice delegated the service of incoming foreign civil process to a private contractor, Process Forwarding International (PFI).

(3)    Information about how to submit requests for service of foreign documents in the United States pursuant to the Hague Service Convention, the Inter-American Service Convention, or requests (letters rogatory) from foreign tribunals of countries not party to any treaty on service of process is available at Hague service web site.  The U.S. Marshals Service web page features "Foreign Process" and "Foreign Civil Process."

(4)    **U.S. Notification about Department of Justice Contractor**:  The United States Department of State notified all foreign embassies in Washington, DC, the Hague Conference on Private International Law and the Organization

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

of American States of the change.  **See:**

    (a)   Circular note from Secretary of State Colin L. Powell to chiefs of mission in the United States on provision of certain judicial assistance (June 4, 2003);

    (b)   Letter from David Epstein, Director, Office of Foreign Litigation, Department of Justice, to Enrique Lagos, Assistant Secretary for Legal Affairs, Organization of American States, on provision of certain judicial assistance (April 30, 2003) on the Department of State, Office of the Legal Adviser, Digest of International Law web page; and

    (c)   Hague Conference on Private International Law web page for U.S. Notice to the Hague Conference on Private International Law.

d. **Hague Service Convention**: The Hague Service Convention provides for service of process by a designated central authority pursuant to a formal request, and includes alternative methods of service to which countries may object in the form of declarations/reservations.  The Hague Conference on Private International Law web page provides information about the Hague Service Convention.

    (1)   **Hague Service Convention Request Form**:  The form required for transmittal of service requests to the foreign central authority Form USM-94, Request for Service Abroad of Judicial or Extrajudicial Documents, is available from the U.S. Marshals Service web page.  For guidance on completing Form USM-94 and transmitting it to the foreign central authority, see the Bureau of Consular Affairs Internet page for the State Department Circular About the Operation of the Hague Service Convention.

    (2)   **Hague Service Convention In Force**:  For the current list of countries and dependencies party to the Convention, see the Status Table for the Hague Service Convention on the Hague Conference web page.  The column captioned Entered into Force (EIF)" reflects when the treaty became valid in that country.

**Note:**  The Hague Conference *web site* designates months with Roman Numerals.

| COUNTRY/DEPENDENCY | ENTERED INTO FORCE | NOTES |
|---|---|---|

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

|  | (EIF) |  |
|---|---|---|
| *Albania* | *07-01-2007* |  |
| Anguilla (UK) | *10-02-1982* |  |
| Antigua and Barbuda | *11-1-1981* |  |
| Argentina | *12-01-2001* | Objects to service by mail (Article 10(a)) |
| Aruba (Netherlands) | *07-27-1986* | Not Extended to Netherlands Antilles |
| Bahamas | *02-01-1998* |  |
| Barbados | *10-01-1969* |  |
| Belarus | *02-01-1998* |  |
| Belgium | *01-18-1971* |  |
| Bermuda (UK) | *07-19-1970* |  |
| Botswana | *09-01-1969* |  |
| Bulgaria | *08-01-2000* | Objects to service by mail (Article 10(a)). |
| Canada | *05-01-1989* |  |
| Cayman Islands (UK) | *07-19-1970* |  |
| China<br>   PRC<br>   Hong Kong SAR<br>   Macao SAR | *01-01-1992* | China (PRC) objects to service by mail (Article 10(a)) |
| *Croatia* | *11-01-2006* | *Objects to service by mail (Article 10(a))* |
| Cyprus | *06-01-1982* |  |
| Czech Republic | *06-01-1982* |  |

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

| Denmark | 10-01-1969 | |
|---|---|---|
| Egypt | 02-10-1969 | Objects to service by mail (Article 10(a)) |
| Estonia | 10-01-1996 | |
| Falkland Islands (UK) | 07-19-1970 | See Argentina declaration. |
| Finland | 11-10-1969 | |
| France | 09-01-1972 | Extended to the entire territory of the French Republic, including overseas Departments (French Polynesia). |
| Germany | 06-26-1979 | |
| Gibraltar (UK) | 07-19-1970 | See Spain declaration. |
| Greece | 09-18-1983 | Objects to service by mail (Article 10(a)). |
| Guernsey, Bailiwick of (UK) | 07-19-1970 | |
| Hungary | 04-01-2005 | Objects to service by mail (Article 10(a)). |
| *India* | 08-01-2007 | *Objects to service by mail (Article 10(a)).* |
| Ireland | 06-04-1994 | |
| Isle of Man (UK) | 07-19-1970 | |
| Israel | 10-13-1972 | |
| Italy | 01-24-1982 | |
| Japan | 07-27-1970 | Objects to service by mail (Article 10(a)).  See Japan country specific flyer. |
| Jersey (UK) | | |

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

| Korea, *Republic of* | 08-01-2000 | Objects to service by mail (Article 10(a)). |
|---|---|---|
| Kuwait | 12-01-2002 | Objects to service by mail (Article 10(a)) |
| Latvia | 11-01-1995 | |
| Lithuania | 06-01-2001 | Objects to service by mail (Article 10(a)). |
| Luxembourg | 09-07-1975 | |
| Malawi | 12-01-1972 | |
| Mexico | 06-01-2000 | Objects to service by mail (Article 10(a)). |
| *Monaco* | 11-01-2007 | |
| Montserrat (UK) | 07-19-1970 | |
| Netherlands | 01-02-1976 | |
| Norway | 10-01-1969 | Objects to service by mail (Article 10(a). |
| Pakistan | 08-01-1989 | |
| Pitcairn (UK) | 07-19-1970 | |
| Poland | 09-01-1996 | Objects to service by mail (Article 10(a). |
| Portugal | 02-25-1974 | |
| Romania | 04-01-2004 | |
| Russian Federation | 12-01-2001 | Objects to service by mail (Article 10(a).  See Russia country specific flyer. **Russia does not consider the Hague Service Convention to apply to the United States.** |

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

| Saint Christopher and Nevis | July 19, 1970 | |
|---|---|---|
| Saint Helena (UK) | 07-19-1970 | |
| Saint Vincent and the Grenadines | 10-27-1979 | |
| San Marino | 11-01-2002 | Objects to service by mail (Article 10(a). |
| Seychelles | 07-01-1981 | Objects to service by mail (Article 10(a)) |
| Slovakia | 06-01-1982 | Objects to service by mail (Article 10(a)) |
| Slovenia | 06-01-2001 | |
| Spain | 08-03-1987 | |
| Sri Lanka | 06-01-2001 | Objects to service by mail (Article 10(a)) |
| Sweden | 10-01-1969 | |
| Switzerland | 01-01-1995 | Objects to service by mail (Article 10(a)) |
| Turkey | 04-28-1972 | Objects to service by mail (Article 10(a)) |
| Turks and Caicos Islands (UK) | 07-19-1970 | |
| Ukraine | 12-01-2001 | Objects to service by mail (Article 10(a)) |
| United Kingdom | 02-10-1969 | Objects to service by mail (Article 10(a)) |
| United States of America | 02-10-1969 | |
| Venezuela | 07-01-1994 | Objects to service by mail (Article 10(a)) |

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

| *Virgin Islands (UK)* | *07-19-1970* | |
|---|---|---|

---

**NOTE:** For the current list of countries and dependencies party to the Convention, see the Status Table for the Hague Service Convention on the Hague Conference web page. The column captioned "EIF" (Entered into Force) reflects when the treaty became valid in that country. The Hague Conference designates months with Roman Numerals. It is important to read the reservations (Res), Declarations (D) and Notifications (N) for each country. The foreign central authorities (Auth) are also listed on the Hague Conference Service Convention page.

---

(3) **Declarations and Reservations**: It is important to read the reservations (Res), Declarations (D) and Notifications (N) for each country. Not all the provisions of the treaty apply to each country. The treaty allows countries to object to certain provisions such as service by a consular officer and service by postal channels. The declarations also note translation requirements.

(4) **Hague Service Convention Foreign Central Authorities**: The foreign central authorities (Auth) are also listed on the Hague Conference Service Convention page.

e. **Inter-American Service Convention**: The Inter-American Convention on Letters Rogatory and Additional Protocol is similar in scope and also provides for service of process by a designated central authority pursuant to a formal request. **Only countries party to both the Convention and the Additional Protocol have a treaty relationship with the United States.** See Treaties in Force on the U.S. Department of State web page. The Inter-American Convention on Letters Rogatory (OAS Treaty Text B-36 and List of Ratifications for OAS Treaty Text B-36), done at Panama January 30, 1975; and Additional Protocol (OAS Treaty Text B-46 and List of Ratifications for OAS Treaty Text B-46) with Annex (regarding service of process) done at Montevideo, Uruguay on May 8, 1979. Senate Treaty Doc. 98-27; 98th Congress; 2d Session. See the Department of State Circular on the Operation of the Inter-American Service Convention, and see Message to the Senate Transmitting the Inter-American Convention on Letters Rogatory and Additional Protocol (1984); Executive Order 12638 -- Delegation of Functions Relating to the Implementation of the Inter-American Convention on Letters Rogatory and Additional Protocol (1988).

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

(1) **Inter-American Service Convention In Force**:  The Inter-American Service Convention is now in force between the United States and Argentina, Brazil, Chile, Colombia, Ecuador, El Salvador, Guatemala, Mexico, Panama, Paraguay, Peru, United States, Uruguay, and Venezuela.  **For the most up to date information about ratifications and accessions to the Convention and the Additional Protocol, see the OAS web pages.**

(2) **Inter-American Service Convention Request Forms**:  Requests for service in a foreign country party to the Convention and Additional Protocol are transmitted on a Form USM-272 (English) and Form USM-272-A (Spanish), Convention Form, available at the office of any United States Marshal or the U.S. Department of Justice's contractor, Process Forwarding International (PFI).

(3) **Transmittal of Requests Under the Inter-American Service Convention**:  Unlike the Hague Service Convention, requests under the Inter-American Convention on Letters Rogatory and Additional Protocol for service abroad and service in the United States cannot be sent directly to the foreign central authority.  Rather, requests are submitted to the U.S. Central Authority's contractor Process Forwarding International (PFI).

# 7 FAM 954  SERVICE OF SUBPOENAS ON U.S. CITIZENS OR LEGAL PERMANENT RESIDENTS

## 7 FAM 954.1  Procedures

*(CT:CON-127;  01-26-2006)*

a. **Authority**:  28 U.S.C. 1783 provides for service of a subpoena on a U.S. citizen or lawful permanent resident of the United States.  22 CFR 92.86 provides that subpoenas may be served by consular officers.  Note that U.S. law enforcement agency representatives at posts abroad do not have the authority to serve such documents.  However, it may be prudent for a U.S. law enforcement agency representative to accompany the consular officer when service is made.  See paragraph d below regarding safety of the consular officer and service of a subpoena.  Subpoenas may not be served on host country nationals and third country nationals who are not

U.S. citizens or U.S. Lawful Permanent Resident Aliens.  (See 7 FAM 944).

b. **How You Will Receive the Subpoena**:  Consular officers serve only Federal criminal subpoenas unless otherwise advised by the Department (CA/OCS), in coordination with L/CA.  Occasionally, a consular officer may be instructed by the Department (CA/OCS) to serve a State criminal subpoena.

 (1)    If a post receives a request for service of a subpoena directly from a court in the United States or from United States government or private legal counsel, consult CA/OCS/PRI before taking any action.  Post should notify CA/OCS/PRI immediately via phone, email, fax or cable.

 (2)    Legal questions may be addressed by posts to CA/OCS/PRI (ASKPRI@state.gov).

c. **Who May be Served**:  The consular officer usually receives a Federal criminal subpoena for service on a U.S. citizen or legal permanent resident, (sometimes referred to as LPR), from the Department (CA/OCS/ACS) by fax, scanned attachment to an email, or express delivery.  Pouch transmittal generally should not be used in cases of service of a subpoena due to time constraints.

d. **Safety of the Consular Officer and Serving a Subpoena**:  The Department (CA/OCS/ACS) will ask the U.S. Department of Justice and the Federal or state prosecutor if there is any reason to be concerned about the safety of the consular officer when making arrangements to serve the subpoena on the witness.

e. **Timing of Service of Subpoena**:  A subpoena must be served as soon as possible. The date of the witness's appearance, noted on the subpoena, is often only days away from the consular officer's receipt of the documents.  The facsimiles are to be given the same weight as originals once the FAX or email copies of the order and subpoena are received, and the subpoena must be served according to the Department's instructions.  Certified copies of the subpoena and the order will be sent subsequently to the consular officer by the fastest means available when feasible.

f. **Instructions on How to Effect Service**:  The Department's memorandum transmitted to post by fax, email or express delivery accompanying the subpoena provides guidelines for service that include the residence and work place address for the witness, along with instructions on how the subpoena should be served.

 (1)    **Personal Service**:  It is preferable that you serve the subpoena personally on the witness.  People being served

with a subpoena may not want to be served, and may try to avoid you.  All your efforts to effect service should be carefully documented.  This will be committed to an affidavit when you complete the RETURN portion of the subpoena.  If you hand the subpoena to the person and he or she refuses to grasp it; drops it on the floor; has you give it to the secretary – they have been served.  Even throwing it over the fence has been considered valid service when it was not possible to gain access to the individual any other way.

(2)  **Leaving the Subpoena for the Witness**:  While it is preferable to personally hand the witness the subpoena (or order to show cause, the copy of the court order, Government Travel Request (GTR) and any cash specified in the instructions), this may not always be possible.  In such cases, a subpoena may be served by delivering it or leaving it for the party for whom it is intended.  If the Department furnishes specific instructions for personal hand delivery and the consular officer is unable to carry them out, the officer should report to CA/OCS/ACS briefly the reasons and circumstances of alternative delivery.

g.  **Proof of Service**:  After service has been made, the consular officer must supply, in an affidavit executed before another consular or diplomatic officer, the information called for in the space on the subpoena marked "RETURN." This is a no-fee service under Schedule of Fees item 58 (a). Promptly send the completed subpoena, with order attached, to the Department (CA/OCS) for relay to the clerk of the appropriate U.S. District Court.  The consular officer must note in the "RETURN" space on the subpoena that this instruction (either to pick up the documents or to have the documents mailed) was given to the witness.  Include this information when reporting to the Department that service was made.

h.  **Fees and Expenses of Witnesses**:  In Federal cases tender a GTR to the witness only at the time service is made. The GTR is for roundtrip air travel between the witness's residence and the city where the court is sitting. Travel is to be at economy jet rates and no U.S. government funds shall be used to pay for first-class travel unless no other commercial service is reasonably available, or such travel is necessary for reasons of disability or medical conditions. Cash in the amount specified in the instruction must also be tendered to the witness at the time service is made.  The U.S. Department of Justice (DOJ), Justice Management Division, Simplified Acquisitions Service Staff, processes requests from DOJ

attorneys for witnesses located in foreign countries who require prepaid transportation and/or small cash advances.  CA/OCS's point of contact at the Justice Management Division, Simplified Acquisitions Service can be reached at 202-307-1954; fax: 202-307-1931.  That office will send telegrams directly to U.S. embassies and consulates notifying posts of the U.S. Government's need for the travel of the witness, providing points of contact in the U.S. Attorney and U.S. Marshal's Offices and fiscal data against which the travel may be charged.  CA/OCS/ACS will coordinate with the Federal prosecutor and the U.S. Department of Justice, Justice Management Division, Simplified Acquisitions Service Staff regarding fiscal data against which fees and expenses of witnesses should be charged in cases where the consular officer will be effecting service of the subpoena on the U.S. citizen or U.S. lawful permanent resident.

---

**See also ...**

U.S. Marshals Service Witness Security

U.S. Attorneys Manual 3-19.100

U.S. Attorneys Manual 3-8.232

---

i.  **ETA of Witness**:  Inform the Department (CA/OCS/ACS) by telegram, email or fax of the witness's estimated time of arrival if known.

j.  **Post Expenses**:  A consular officer who will incur travel expenses in effecting service should contact the Department (CA/OCS/ACS) for an appropriation number and fund code against which the travel may be charged. The appropriation number and fund code will not be the same as those used for the GTR.

# 7 FAM 954.2  Civil and Administrative Subpoenas

*(CT:CON-127;   01-26-2006)*

Consular officers may receive requests for service of civil and administrative subpoenas.  Refer such requests to the Department (CA/OCS/PRI) (ASKPRI@state.gov), which will confer with L/CA regarding the propriety of complying with such requests.

# 7 FAM 954.3  Service of Subpoenas On Host Country or Third Country Nationals  or

# Institutions

*(CT:CON-127;   01-26-2006)*

a. Consular officers should be aware that some countries are particularly sensitive to service of administrative subpoenas or charging letters from U.S. administrative agencies, such as the Securities and Exchange Commission (SEC), Federal Trade Commission (FTC), Commodity Futures Trading Commission (CFTC), Internal Revenue Service (IRS), and others.  Report to the Department (CA/OCS) any information available about proper methods of service of such documents in their host country.

b. A subpoena issued in the United States for service on a person other than a U.S. citizen or permanent resident alien has no force or effect outside the United States. Consular officers have no authority to serve subpoenas on non-U.S. citizens or permanent resident aliens.  Promptly report such requests to the Department (CA/OCS/PRI) (ASKPRI@state.gov) because often they have resulted in protests from host governments and should be avoided. The Department will inform the issuing authority of its error.

# 7 FAM 955  SERVICE PURSUANT TO THE FOREIGN SOVEREIGN IMMUNITIES ACT

*(CT:CON-127;   01-26-2006)*

a. 28 U.S.C. 1608, the Foreign Sovereign Immunities Act of 1976 (FSIA) (28 U.S.C. 1330, 28 U.S.C. 1602) provides for service of process on a foreign state with the assistance of the Department of State in an action where the foreign state is a defendant and where service cannot be effected by the other methods prescribed in the Act.  (See 22 CFR 93).  Information about the service provisions of the FSIA is available from the Department of State, Bureau of Consular Affairs Internet page:

> **See ...**
>
> FSIA Checklist for Plaintiffs
>
> Service Provisions of the FSIA

b. **CA/OCS/PRI Action Office**:  Requests for service of FSIA cases are referred to posts only by the Department, Bureau of Consular Affairs, Overseas Citizens Services, Office of Policy Review and Inter-Agency Liaison (CA/OCS/PRI) (ASKPRI@state.gov). Such cases are rare, but complex, demanding special attention on the

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

part of the consular officer.  Contact the Department (CA/OCS/PRI) **immediately** regarding any request sent directly to the consular officer by a U.S. court or attorney before taking any action.

c. **Consular Role**:  The consular officer is required to effect service on the defendant foreign state by diplomatic note.  Proof of service is made by attaching a certified copy of the Embassy's note to the second set of documents (summons, complaint, and notice of suit) and returning those documents, with the note, to the Department (CA/OCS/PRI) for relay to the clerk of the court.  7 FAM Exhibit 955c provides a sample certification using the prescribed wording.

d. **Not Discretionary**:  Service pursuant to the FSIA is a statutory obligation; **the consular officer may exercise no discretion in complying with the Act**. 7 FAM Exhibit 955d provides an excerpt of a Circular Diplomatic Note of December 10, 1976, apprising foreign missions of the Act.  The officer must report to the Department (CA/OCS/PRI) (ASKPRI@state.gov) the date the documents were received by the embassy, the date they were transmitted to the foreign ministry, and the date the executed request was sent to the Department (CA/OCS/PRI) for relay to the court. This report must also give the invoice, registry, and pouch numbers by which the documents were returned to the Department (CA/OCS/PRI).

e. **Model Diplomatic Note Transmitting FSIA Case**:  The diplomatic note transmitting the documents to the Foreign Ministry should conform generally to the following language, formatted as required by the Department's Correspondence Handbook, 5 FAH-1, or the Secretariat Handbook.  CA/OCS/PRI will adjust the text as appropriate in transmitting it to the U.S. Embassy, after clearing our instruction with L/CA, L/DL and the appropriate regional bureau desk.

---

**Sample Text of Diplomatic Note**

**[Complimentary Opening]**

The Embassy of the United States has the honor to refer the Foreign Ministry to the lawsuit entitled [title of lawsuit], in which the Government of [name of country] is a defendant.  The case is pending in the United States District Court, **[District], [City, State]**, docket number **[Docket Number]**.  The Embassy herewith transmits a summons and complaint.  This note constitutes service of these documents upon the Government of **[name of country]** as contemplated in Title 28, United States Code, Section 1608(a)(4).

---

Under applicable United States law, a defendant foreign state in a lawsuit must file an answer to the complaint or some other responsive pleading within 60 days from the date of service of the complaint (that is, the date of this note) or face the possibility of having judgment entered against it without the opportunity of presenting evidence or arguments in its behalf. Accordingly, the Embassy requests that the enclosed summons and complaint be forwarded to the appropriate authority of the Government of [name of country] with a view towards taking whatever steps are necessary to avoid a default judgment.

Please note that under United States law and procedure, neither the Embassy nor the Department of State is in a position to comment on the present suit. Under the laws of the United States, any jurisdictional or other defense including claims of sovereign immunity must be addressed to the court before which the matter is pending, for which reason it is advisable to consult an attorney in the United States.

In addition to the summons and complaint, the Embassy is enclosing a "notice of suit" prepared by the plaintiff, which summarizes the nature of the action which has been filed against the government, and the factual allegations on which the case is based. The notice of suit includes a copy of pertinent United States laws concerning sovereign immunities.

**[Complimentary Closing]**

f.  **Status Reports**:  Posts should communicate with CA/OCS/PRI by email with reports about the status of the request.

g.  **Proof of Service**:  The embassy should affix the consular certification to a certified copy of the diplomatic note transmitting the summons, complaint and notice of suit (or default judgment) to the Foreign State.  Fax an advance copy to CA/OCS/PRI at 202-736-9111 or transmit a scanned copy by email.  The original/certified copy should be sent via express courier service to CA/OCS/PRI for transmittal to the U.S. court.

h.  **Response by the Foreign Government**:  Any response by the foreign government to the U.S. Embassy diplomatic note should be conveyed to CA/OCS/PRI, with a consular officer certification of any diplomatic note.  Under United States law and procedure, neither the Embassy nor the Department of State is in a position to comment on the present suit. Under the laws of the United States, any jurisdictional or other defense including claims of sovereign immunity must be addressed to the court before which the matter is pending, for which reason it is advisable for the foreign

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

government to consult an attorney in the United States.

# 7 FAM 956  SERVICE IN SECTION 340 INA CASES

*(CT:CON-127;  01-26-2006)*

a. Consular officers must deliver, or assist in delivering, to designated persons documents relating to proceedings pursuant to 8 U.S.C. 1451 (Section 340 of the Immigration and Nationality Act (INA), in the cancellation of certificates of naturalization when such documents are received from duly authorized officials of the Federal courts.

b. Responsibility for providing detailed instructions on the procedure for delivering such documents rests with the court or with the U.S. attorney concerned; consular officers must follow such instructions carefully.  7 FAM Exhibit 956 provides; a sample certificate of service, affidavit of consular officer serving process, and affidavit of second consular officer (or diplomatic officer), which constitute proof of service.

# 7 FAM 957  SERVICE AT REQUEST OF CONGRESS OR U.S. GOVERNMENT AGENCIES

*(CT:CON-127;  01-26-2006)*

Consular officers have no authority to serve legal process, such as subpoenas or citations, in connection with congressional investigations, on persons in their consular districts, nor may they serve such process at the request of U.S. Government agencies other than the Department of State.  Refer to the Department (CA/OCS/PRI) (ASKPRI@state.gov) all requests for such service.  (See 22 CFR 92.91).

# 7 FAM 958  SERVICE ON U.S. MILITARY PERSONNEL ABROAD

*(CT:CON-127;  01-26-2006)*

a. Neither the Department of Defense (DOD) nor the military departments have a uniform policy concerning the service of civil or

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

criminal process on military personnel abroad or at sea. DOD and its components, however, in accordance with applicable policies and procedures, will allow and assist in the service of civil process on their personnel in certain circumstances, to be initially determined by the staff judge advocate of the appropriate DOD component. Significantly different policies and procedures apply to service of criminal process. For guidance on cases concerning civil or criminal service of process on U.S. military personnel, consult with CA/OCS, which will contact DOD for instructions.

b. Relevant "Status of Forces" agreements in some countries may prohibit local authorities from serving American judicial process on U.S. military installations.

c. Commanders may impose restrictions upon persons entering their installations, limiting the service of process to registered mail or service outside the military installation.

d. Generally, commanders or other officials in charge when contacted about service of process on an employee will bring the matter to the attention of the individual and will determine whether he or she wishes to accept service voluntarily. If the individual does not desire to accept service, the party requesting such service will be notified and will be advised to follow the procedures prescribed or recognized by the laws of the foreign country.

e. In countries party to The Hague Service Convention or Inter-American Service Convention and Additional Protocol, the foreign Central Authority may attempt to accomplish service under the applicable Convention if the prevailing Status of Forces agreement (SOFA) permits access to the base. Installation commanders may impose reasonable restrictions upon persons who enter their installations to serve process. It may therefore be necessary for the foreign Central Authority to effect service on the individual outside the installation. Some foreign Central Authorities may decline jurisdiction over cases involving U.S. military personnel depending on the SOFA agreement applicable (if any).

f. Likewise, a request for service on U.S. military personnel pursuant to a letter rogatory may prove difficult as the foreign court may decline jurisdiction. It may be necessary to retain the services of a private attorney or other agent to effect service on the individual outside the U.S. military installation. Service by registered mail is also another option.

g. Inquirers may be directed to the Judge Advocate General's office for the appropriate branch of the U.S. military at the U.S. base abroad for further guidance (See Judge Advocate General Corps).

> **See:**
>
> **HHS/OCSE's A Caseworker's Guide to Child Support and the Military (which includes information about service of process);**
>
> Cook, The Armed Services And Model Employer Status For Child Support Enforcement: A Proposal To Improve Service Of Process, Thesis, The Judge Advocate General's School, United States Army, Charlottesville, VA (1996);
>
> A Guide to Child Support Enforcement Against Military Personnel, Serving the Soldier, (February 1996), Administrative and Civil Law Department, Legal Assistance Branch, the Judge Advocate General's Legal Center and School, U.S. Army, Charlottesville, VA 22093-1781;
>
> Barber, Soldiers, Sailors and the Law, Family Advocate, ABA Family Law Section, Vol. 9, No. 4, 38, 41 (Spring 1987).

# 7 FAM 959  SERVICE ON DEPARTMENT OF STATE PERSONNEL

*(CT:CON-127;  01-26-2006)*

a. **Official Capacity:** See 7 FAM 980 and 22 CFR 172 for service on U.S. State Department personnel in their official capacity.

b. **Personal Capacity:** The Department is not an agent for the service of process upon its employees with respect to purely personal, non-official litigation. Service is usually attempted by private litigants by international registered mail, return receipt requested, or by an agent, usually a foreign attorney retained for that purpose. The Department recognizes that its employees overseas should not use their official positions to evade their personal obligations and will counsel and encourage Department employees to accept service of process in appropriate cases. (See 22 CFR 172.2(d)).

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

# 7 FAM EXHIBIT 953.6
# SAMPLE OF A DIPOMATIC NOTE
# TRANSMITTING A LETTER ROGATORY

*(CT:CON-187;   09-11-2007)*

(Appropriate complimentary opening)

The Embassy of the United States of America presents its compliments to the Ministry of Foreign Affairs and requests the Ministry's aid in transmitting the enclosed request for international judicial assistance to the appropriate judicial authority of the Republic of Argentenia.

The Circuit Court for the Fifth District of California has transmitted the annexed letter rogatory in the matter of *Syvia Maria Gomez de Suarez v. Jose Antonio Munoz Rivas*. The case is a civil matter pending before the Circuit Court for the Fifth District of California concerning a motion for divorce. The letter rogatory requests that service of process be effected upon *Jose Antonio Munoz Rivas* at the address listed in the letter rogatory, *1258 Avenida Colombia*, Buenos Aires, Argentina. The Circuit Court has provided funds to reimburse any costs incurred in executing the letter rogatory.

The Embassy is grateful for the Ministry's assistance in the interests of justice. Be assured that the Circuit Court will provide similar assistance to the judicial authorities of Argentina. The Embassy would appreciate being kept advised of the progress of the letter rogatory specifically the date it is assigned to the appropriate judicial authority for service.

(Appropriate complimentary closing)

# GUIDE FOR PREPARATION OF A DIPLOMATIC NOTE TRANSMITTING A LETTER ROGATORY

In addition to following standard guidelines for preparation of a diplomatic note, be sure to:

1. Include the name of the court which has action in the case.

2. Specify the names of the litigants.

3. Indicate whether the case involves a civil or criminal matter.

4. Specify what type of case is involved (brief details).

5. Mention the type of action to be effected (service of process/obtaining evidence).

6. Name the person to be served or deposed.

7. Include the full address given in the letter rogatory.

8. Indicate the arrangement for payment of costs of service.

9. Specify the concern for the pursuit of justice.

10. Volunteer reciprocal assistance.

11. Request that the Ministry keep the post informed of progress in execution of the request.

(For instructions on how to format a diplomatic note, see the Department's Correspondence Handbook, 5 FAH-1 .)

# 7 FAM EXHIBIT 953.6 B
# CERTIFICATION RETURNING AN
# EXECUTED LETTER ROGATORY

### (CT:CON-187;   09-11-2007)

---

VENUE.

|  |  |  |
|---|---|---|
| Japan | ) | |
| (Name of Country) | ) | |
| | ) | |
| Prefecture of Tokyo | ) | |
| (Name of County, Province, etc.) | ) | |
| | ) | ss: |
| City of Tokyo | ) | |
| (Name of City) | ) | |
| | ) | |
| Embassy of the United States of America | ) | |
| (Name of Foreign Service Post) | ) | |

I hereby certify that I received the annexed letters rogatory and accompanying documents

on the date shown below.

                                 April 15, 2005

(Date of Receipt)

                                 Ministry of Foreign Affairs

                of Japan

(Transmitting Authority)

(Signature of Consular Officer)

                                 Marlowe K. Thurgood

(Typed Name of Consular Officer)

                      Vice Consul of the United States of America

(Title of Consular Officer)

                                 April 19, 2005

(Date)

(SEAL)

---

# 7 FAM EXHIBIT 955C
# SAMPLE OF A CERTIFICATE OF SERVICE FSIA

### (CT:CON-127;   01-26-2006)

Certificate of Service
Under the Foreign Sovereign Immunities Act

VENUE.

| | |
|---|---|
| Islamic Republic of Mauritania<br>(Name of Country) | ) <br> ) <br> ) |
| Province of Trarza<br>(Name of Country, Province, etc.) | ) <br> ) <br> )     ss: |
| City of Nouakchott<br>(Name of City) | ) <br> ) <br> ) |
| Embassy of the United<br>State of America<br>(Name of Foreign Service Post) | ) <br> ) <br> ) |

I certify that this is a true copy of the diplomatic note of the Embassy of the United States of America which was delivered to the Ministry of Foreign Affairs of the Islamic Republic of Mauritania.

(Number of Diplomatic Note)                 Diplomatic Note Number   101

(Date of Note)                                         March 14, 1994

(Signature of Consular Officer)

(Typed Name of Consular Officer)                 Elizabeth C. Halbert

(Title of Consular Officer)                   Consul of the United States of America

Name of Foreign Service Post              Embassy of the United States of America
(SEAL)

(Date)                                                   March 16, 1994

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

# 7 FAM EXHIBIT 955D
# EXCERPT, CIRCULAR DIPLOMATIC NOTE FROM THE SECRETARY OF STATE DETATED DECEMBER 10, 1976, ON FSIA SERVICE OF PROCESS REQUIREMENTS

*(CT:CON-127;   01-26-2006)*

**Digest**

**of**

**United States Practice**

**in**

**International Law**

**1976**

by

Eleanor C. McDowell

Office of the Legal Adviser
Department of State

- 2 -

**Earlier volumes:**

**1973 Digest of United States Practice
in International Law**
Stock No. 044 - - 000 - - 01525 - 1            $7.50

**1974 Digest of the United States Practice
in International Law**
Stock No. 044 - - 000 - - 01566 - 8
**(2 Printing)**          **$11.00**

**1975 Digest of United States Practice
in International Law**
Stock No. 044 - 000 - 01605 - 2            $11.00

**DEPARTMENT OF STATE PUBLICATION 8909
Release Septmber 1977**

_____

For sale by the superintendent of Documents, U.S. Government Printing Office
Washington, D.C. 20420
Stock Number 044—000—01645-1

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

- 3 -

| SOVEREIGN IMMUNITY | 327 |
|---|---|

By a circular note dated December 10, 1976, the Department of State informed all foreign embassies in Washington of the enactment of the Foreign Sovereign Immunities Act and called their attention to significant aspects of the legislation, as follow:

1. The legislation will make substantial changes in United States law on the question of when a foreign state has immunity from suit. The legislation incoporates the restrictive doctrine of sovereign immunity which the United States has consistently followed since the Tate Letter of 1952, as the appropriate rule of modern international law. It has been the practice of the United States Government, since 1973, not to claim immunity for itself in foreign courts in any case when immunity would not be accorded to a foreign state under the new legislation.

2. The new legislation will eliminate the current practice in the United States of seizing or attaching foreign government property, as a method for obtaining jurisdiction against a foreign state or its entities. Section 1609 of the statute affords an absolute immunity from such jurisdictional attachments.

3. In addition to questions of state immunity, the new legislation will also prescribe the jurisdiction of Federal courts in the United States over foreign states and their agencies and instrumentalities. Under the statute, jurisdiction does not arise from the attachment of property, or from the service of process, Instead, jurisdiction depends on the existence of some connection (or contact) between the United States and the events giving rise to the litigation. These required connections (or contacts) are mentioned in the text of section 1605 of the statute. They are also incorporated by reference into the jurisdictional provisions of section 1330.

4. The statutue also requires that adequate notice of a suit be given to the foreign state. This notice must be given by the service of judicial documents (in particular, a summons and complaint) in accordance with section 1608 of the statute. This service of notice, again does not confer jurisdiction, but is intended to inform the foreign state of the existence of the legal proceeding. It should also be noted that section 1608(a)(4) of the statute requires the Department of State to deliver this notice through diplomatic channels, in cases where other methods of service are unavailable.

5. The new legislation will provide, under limited circumstances, for execution against certain commercial and commercially related property, in order to satisfy a

- 4 -

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

328          STATE TERRITORY, JURISDICTION, AND IMMUNITIES

final judgement against a foreign state or its entities. These limited circumstances are prescribed in section 1610(c) and 1611 of the statute. It should be noted that under section 1610(c), a foreign state or its entities must be afforded a reasonable opportunity to satisfy a judgement before execution can be accorded.

6. The new statute precludes the Department of State from making decisions on state immunity. Such decisions must be made exclusively by the courts. Thus, when the legislation takes effect on January 19, 1977, the Department will not be able to continue its prior practice of entertaining diplomatic requests to determine questions of sovereign immunity, or of conveying such determinations of immunity to an American court...

Dept. of State File No. P77 0014-208.

# 7 FAM EXHIBIT 956
# SAMPLES OF CERTIFICATE OF SERVICE OF PROCESS, AFFIDAVIT OF CONSULAR OFFICER WHO SERVED PROCESS, AND AFFIDAVIT OF SECOND OFFICER ABOUT SERVICE OF PROCESS

*(CT:CON-127;   01-26-2006)*

Sample of a Certificate of Service of Process
on a Designated Individual or Company

State of California

VS.                                             CR. No. 09200

Harold D. Brown

REQUESTING AUTHORITY:

Circuit Court of the

Circuit, State of California
SERVE AT:

Kevin Sheridan, 55 Elgin

Road,
Ballsbridge, Dublin Ireland

NAME OF ATTORNEY OR               Xavier Sanchez
OTHER ORIGINATOR:                 Prosecuting Attorney
                                  Los Angeles, California

NAME AND ADDRESS                   Kevin Sheridan, 55 Elgin
Road,
OF PERSON SERVED                   Ballsbridge, Dublin, Ireland

SIGNATURE OF PERSON SERVED:

DATE OF SERVICE:

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

- 2 -

Sample of an Affidavit of a Consular Officer Who
Served Process

VENUE.

|                                      |   |     |
|--------------------------------------|---|-----|
| Ireland                              | ) |     |
| (Name of Country)                    | ) |     |
|                                      | ) |     |
| County of Dublin                     | ) |     |
| (Name of County, Province, etc.)     | ) |     |
|                                      | ) | ss. |
| City of Dublin                       | ) |     |
| (Name of City)                       | ) |     |
|                                      | ) |     |
| Embassy of the United States         | ) |     |
| of America                           | ) |     |
| (Name of Foreign Service Post)       | ) |     |

I hereby certify that I have personally served a certified true copy of an indictment and a copy of a warrant, copies which are attached hereto, on the individual at the address shown on the annexed certificate of service on the date indicated.

(Signature of Affiant)

Malcom D. Simms

(Typed Name of Affiant)

Vice  Consul  of  the  United  States

(Title of affiant)

        March 17, 1994
        (Date)

U.S. Department of State Foreign Affairs Manual Volume 7 – Consular Affairs

- 3 -

Sample of an Certification of a Second Consular Officer About
a Consular Officer a Affidavit of Service of Process

VENUE.

|  |  |  |
|---|---|---|
| Ireland | ) | |
| (Name of Country) | ) | |
| | ) | |
| County of Dublin | ) | |
| (Name of County, Province, etc.) | ) | |
| | ) | ss. |
| City of Dublin | ) | |
| (Name of City) | ) | |
| | ) | |
| Embassy of the United States | ) | |
| of America | ) | |
| (Name of Foreign Service Post) | ) | |

SUBJECT:   Service of Process By            Malcolm D. Simms
(Typed Name of Consular Officer)

Vice Consul of the United States of American
(Title of Consular Officer)

I certify that on this day the individual named above appeared before me and, being
duly sworn, maed the statements set forth in the attached instrument.


(Signature of Consular Officer)

                              John B.  Skeffington
(Typed Name of Consular Officer)

                        Consul  of  the  United  States  of  America
(Title of Consular Officer)

                              March 14, 1994
    (Date)