SCOTT A. THOMPSON
TAMI S. STARK (TS-8321)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
701 Market Street
Suite 2000
Philadelphia, PA  19106
Telephone: (215) 597-3100
Telefax: (215) 597-2740

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ No. 08CV0415 (LBS) |
| | : | ECF Case |
| ANATOLY RUSS, | : | |
| | : | |
| Defendant. | : | |
|_____|:| |

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF SECURITIES AND EXCHANGE
COMMISSION'S  MOTION TO DISTRIBUTE FUNDS**

Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this Memorandum of Law in support of its motion seeking to distribute funds paid into the Court pursuant to the Court's Order of July 24, 2008 to certain parties injured by defendant Anatoly Russ' conduct.

Between August 23, 2006 and September 19, 2006, Russ engaged in a fraudulent scheme to control the prices at which he purchased and sold options on a thinly traded bond Exchange Traded Fund ("ETF") by intruding into innocent third parties' online trading accounts and placing unauthorized orders designed to match orders in his own accounts – at prices he determined.  This fraudulent behavior allowed Russ to reap $88,465 in unlawful profits while

causing losses of $339,929 in the intruded online accounts – which was absorbed by the account holders' online broker-dealers, who reimbursed their account holders.

On July 24, 2008, the Court entered an Order of Final Judgment on Default and an Order of Permanent Injunction and Other Relief and an Order freezing Russ' assets held by U.S. based broker-dealers and directing those assets to be paid into the Court, knowing that the Commission would then seek to have those funds distributed to the broker-dealers who absorbed losses as a result of defendant's fraud. Now that the funds have been paid into the Court, the Commission seeks distribution of those funds.

## RELEVANT FACTS[1]

### I.    THE FRAUD

Anatoly Russ engaged in a complex fraudulent internet scheme by which he manipulated the prices at which he purchased and sold options on iShares Lehman Aggregate Bond Fund (AGG), a thinly traded ETF, by hacking into third parties' online brokerage accounts (the "intruded accounts") and placing unauthorized orders designed to match orders in his own online accounts. In just over a three week period from August 23 through September 19, 2006, Russ used electronically stolen usernames and passwords to gain access to at least seven online brokerage accounts of unwitting third parties at E*Trade, Scottrade, and TD Ameritrade, while trading in four series of the thinly traded AGG option contracts.

---

[1]    As the Court has entered Final Judgment against Russ, we recite here only those facts relevant to the request to distribute funds to those parties who suffered losses due to the fraud. For a more complete description of the facts, please see the Memorandum of Law in Support of Plaintiff Securities and Exchange Commission's Motion for Final Judgment on Default and Order of Permanent Injunction and Other Relief Against Defendant Anatoly Russ and An Order Freezing Assets and Directing Payment to the Court, docket entry number 15.

As a result of his fraudulent scheme, Russ realized at least $88,465 in unlawful profits and caused losses of $339,929 in the intruded online accounts. The online broker-dealers for the intruded accounts – Scottrade, E*Trade, and TD Ameritrade – reimbursed their account holders for all losses related to Russ' unlawful scheme, bearing the losses themselves. Scottrade absorbed a $7,508.75 loss. See Declaration of James Hassler at ¶ 12, Exhibit A. E*Trade absorbed a $131,827.61 loss. See Declaration of James Autrey at ¶¶ 12, 18 & 24, Exhibit B. And, TD Ameritrade absorbed a $200,592.92 loss. See Declaration of Timothy L. Keninger at ¶ 24, Exhibit C.

## II.    THE COURT'S ORDERS OF JULY 24, 2008

On July 24, 2008, the Court entered two orders. First, the Court entered the Final Judgment on Default and Order of Permanent Injunction and Other Relief Against Defendant Anatoly Russ. That order (i) entered Final Judgment by default; (ii) permanently enjoined defendant from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; (iii) ordered defendant Russ to disgorge $88,465 and pay $12,407.52 in prejudgment interest; and (iv) ordered defendant Russ to pay a civil penalty in the amount of $130,000. That same day, the Court also entered the Order Freezing Assets and Directing Payment to the Court. That order froze Russ' funds currently held by Penson Financial Services, Inc. and TD Ameritrade, Inc. and directed those broker-dealers to transfer Russ' funds to the Court in partial satisfaction of the final judgment, so they could be distributed to the broker-dealers who absorbed the losses of the intruded account holders. Pursuant to that order, on July 29, 2008, Penson Financial Services, Inc. sent a check in the amount of $27,373.88, representing the balance of Russ' account, to the Clerk of Court (receipt Number 658646, placed into CRIS on August 8, 2008). Similarly, on

July 31, 2008, TD Ameritrade, Inc. sent a check in the amount of $2,375.96, representing the balance of Russ' account, to the Clerk of Court (receipt Number 659122, placed into CRIS on August 13, 2008).

## ARGUMENT

## I.    DISTRIBUTION OF THE FUNDS IS APPROPRIATE.

Now that Penson Financial Services, Inc. and TD Ameritrade, Inc. have paid the balance of Russ' U.S. accounts housing his ill-gotten gains into the Court, the funds should be distributed to those broker-dealers who absorbed their investors' losses caused by Russ' fraud.

The Second Circuit has recognized that, in dealing with disgorgement ordered for violating Section 10(b) of the Securities and Exchange Act of 1934, as was ordered here, "[o]nce the profits have been disgorged, it remains within the court's discretion to determine how and to whom the money will be distributed." SEC v. Fischbach Corp., 133 F.3d 170, 175 (2d Cir. 1997). Here, because the funds available to the Court at this time are not sufficient to make the injured parties whole, the Commission contends that the funds should be distributed in proportion to the losses absorbed. This is the most equitable solution. The following chart explains how the Commission calculated its proposed distribution payments.

| Broker-Dealer | Absorbed Loss | Percentage of Total Absorbed Loss | Proposed Distribution Payment |
|---|---|---|---|
| Scottrade, Inc. | $7,508.75 | 2.21% | $657.47 |
| E*Trade, Inc. | $131,827.61 | 38.78% | $11,536.99 |
| TD Ameritrade, Inc. | $200,592.92 | 59.01% | $17,555.38 |
| **TOTALS:** | $339,929.28 | 100% | $29,749.84 |

With the small number of injured parties, and the relatively small amount of funds that remained accessible in the United States, only three payments need to be made – one to Scottrade, one to E*Trade, and one to TD Ameritrade, totaling just $29,749.84.  Given the limited nature of this distribution, the Clerk's office has told the Commission that making the payments would not create any logistical problems.[2]

## **CONCLUSION**

For the reasons stated above, the Commission respectfully requests that this Court grant the Commission's motion and order the distribution of the funds.

Respectfully submitted,

s/ Scott A. Thompson
Scott A. Thompson
Tami S. Stark (TS-8321)

Attorneys for Plaintiff

**SECURITIES AND EXCHANGE COMMISSION**
Mellon Independence Center
701 Market Street, Suite 2000
Philadelphia, PA  19106
Telephone: (215) 597-3100
Facsimile: (215) 597-2740

Dated: August 25, 2008

---

[2]    Because the defendant has failed to make any appearance, and is a Russian citizen with no other known assets within the United States, the Commission is not confident about recovering the remainder of the amount owed pursuant to the Final Judgment.  However, if such funds are obtained and paid into the Court, the Commission would then propose distributing those funds based on the same ratios contained in the chart above.

# EXHIBIT A

*Securities and Exchange Commission v. Anatoly Russ, Civ No. 08CV0415 (LBS)*

**DECLARATION OF James Hassler**                    **REDACTED**

I, James Hassler, hereby declare as follows:

1.    I am an adult resident of the State of Missouri.

2.    I am employed as a Senior Fraud Analyst for Scottrade, Inc.

3.    Scottrade is a member broker-dealer of the Financial Industry Regulatory
      Authority (FINRA). Its principal office is located in St. Louis, MO.

4.    I have been employed by Scottrade since May of 2006. My primary duties
      include the analysis and investigation of proprietary fraud detection systems,
      client account fraud data, and shared fraud information to discover and prevent
      account pump-and-dump intrusions.

5.    I have been in the securities industry since May of 2006 and hold Series 7, 63, and
      24 registrations.

6.    Scottrade customers are able to place their own trades by accessing their
      brokerage accounts online. A brokerage account can only be accessed online by
      using a personalized username and password that is given to each customer.

7.    Analysts working in Scottrade's Risk Management Department are responsible
      for investigating and confirming account intrusion activity. Determinations are
      made by assessing account DNS information (IP address analysis), account user
      agent information, previous account activity, and any fraud information that has
      been shared by competitor firms.

8.    Scottrade maintains an account, number [redacted]86, which was previously
      designated as ▇▇▇▇86, in the name of Jean Augusma ("Augusma account").
      According to account records, Jean Augusta is the only person authorized to
      access the Augusta account and to transact trades in the account.

9.    On August 28, 2006, between 10:44 a.m. and 10:46 a.m., sell orders were placed
      in the Augusma account, resulting in the liquidation of various stocks from the
      account.

10.   On August 28, 2006, at 10:56 a.m., the Augusma account purchased 100 March
      07 97 put options contracts on iShares Lehman Aggregate Bond Fund (symbol
      "AGGOO") at $1.00.

11.   On August 28, 2006, Scottrade's Risk Management Department determined that
      the purchases of AGGOO options contracts in the Augusma account, as described
      above, were not placed by Jean Augusma and were not authorized by him. On

1

August 28, 2006, Scottrade's Risk Management Department also determined that the sales of various stocks on August 28th in the Augusma account, as described above, were not placed by Jean Augusma and were not authorized by him. Under the circumstances, Scottrade determined that the unauthorized trades in the Augusma account were initiated as part of an online fraud. Scottrade has made this determination by analyzing and investigating DNS information (IP address analysis), account user agent information, previous account activity, and fraud information that has been shared by competitor firms.

12.   The unauthorized trades of AGGOO options contracts in the Augusma account referenced above as well as additional related unauthorized trades resulted in a total loss of $7,508.75. Although not legally obligated to do so, Scottrade restored the Augusma account to its original state by reimbursing the account for the losses and restoring the securities positions as they existed prior to the unauthorized trading.

13.   Scottrade has concluded that the unauthorized trades were likely caused by someone gaining unauthorized access to the usernames and passwords for the Augusma account. A review of the login history of the Augusma account indicates that entry into the account on the day the unauthorized trading occurred was accomplished via Scottrade's secure website using the unique username and password for the Augusma account.

14.   The securities were removed from the Augusma account and billed into Scottrade's internal error account. Scottrade sent the client a security certification letter describing the situation, as well as free antivirus software to assist in improving the client's internet security.

15.   Scottrade has provided to the U.S. Securities and Exchange Commission documentation relating to the Augusma account referenced above, including (1) account opening documents; (2) correspondence; (3) order tickets; (4) monthly account statements; and (5) account login and internet protocol histories, for the relevant time period.

James Hassler

Executed:   October 10, 2007
20071010 Hassler Declaration Redacted - Scottrade.doc

2

## EXHIBIT B

*Securities and Exchange Commission v. Anatoly Russ, Civ No. 08CV0415 (LBS)*

## DECLARATION OF JAMES AUTREY

<span style="float:right">**REDACTED**</span>

I, James Autrey, hereby declare as follows:

1.    I am an adult resident of the Commonwealth of Virginia.

2.    I am employed as the Senior Manager of Corporate Security Investigations for E*TRADE Financial Corporation ("E*TRADE").

3.    E*TRADE is the indirect parent company of E*TRADE Securities LLC ("ETS"), an NASD member broker-dealer. E*TRADE's principal office is in New York, New York.

4.    I have been employed by E*TRADE since July 1996. My primary duties include managing internal and external corporate investigations.

5.    I have been in the securities industry since May 1993 and hold Series 4, 7, 24, and 63 registrations.

6.    ETS customers are able to self-direct trades by accessing their brokerage accounts online. A customer can only access an ETS brokerage account online by entering a personalized username and password into the ETS website.

7.    When investigating potential unauthorized trading activity in a customer's account, an investigator from E*TRADE's Corporate Security Investigations group ("CSI") typically will obtain a sixty (60) day Internet Protocol ("IP") address login history of the customer account and compare the IP addresses that accessed the account when there was no suspicious trading activity to the IP address that logged into the account at the time of the alleged unauthorized trading activity. Specifically, the investigator analyzes the IP address login history to determine whether the IP address in question is out-of-pattern in that it originated from a different geographical area than the address on the account registration or used a different Internet Service Provider than the prior IP addresses. Finally, if additional information is needed from the customer to establish a login pattern, the account holder is contacted by ETS Customer Service to obtain the relevant information.

8.    ETS maintains an account, number [redacted]48, in the name of James S. Parisi and Patricia E. Parisi ("Parisi account"). According to account records, James S. Parisi and Patricia E. Parisi are the only persons authorized to access the Parisi account and to transact trades in the account.

9.    On August 23, 2006, between 10:24 a.m. and 10:35 a.m., the Parisi account purchased 505 March 07 97 put options contracts on iShares Lehman Aggregate Bond Fund (symbol "AGGOO") at $.70 to $1.00.

10. On August 23, 2006, at 10:36 a.m., the Parisi account sold 320 AGGOO options contracts at $.05. Shortly thereafter, at 10:45 a.m., the Parisi account purchased 320 AGGOU options contracts at $.80.

11. On August 25, 2006, CSI determined that the sales and purchases of the AGGOO options contracts on August 23rd in the Parisi account, as described above, were not placed by James S. Parisi or Patricia E. Parisi and were not authorized by either of them. Under the circumstances, CSI determined that the unauthorized trades in the Parisi account were initiated as part of an online fraud. CSI has made this determination in part by interviewing the customer and by reviewing the sixty (60) day IP login history of the Parisi account and confirming that the IP address that was used to access the Parisi account on August 23, 2006 was out-of-pattern.

12. The unauthorized sales and purchases of AGGOO options contracts in the Parisi account referenced above as well as additional related unauthorized trades resulted in a total loss of $88,375.35. ETS has restored the Parisi account to its original state by reimbursing the account for the losses and restoring the securities positions as they existed prior to the unauthorized trading activity.

13. ETS maintains an account, number [redacted]53, in the name of Alexander Babinski ("Babinski account). According to account records, Alexander Babinski is the only person authorized to access the Babinski account and to transact trades in the account.

14. On August 28, 2006, between 9:35 a.m. and 9:45 a.m., buy and sell orders were placed in the Babinski account. As a result, various stocks were liquidated from the account.

15. On August 28, 2006, at 9:57 a.m., the Babinski account purchased 340 AGGOO options contracts at $.90 and $1.00.

16. On August 28, 2006, at 9:59 a.m., the Babinski account sold 340 AGGOO options contracts at $.10.

17. On August 28, 2006, CSI determined that the sales and purchases of the AGGOO contracts on August 28, 2006 in the Babinski account, as described above, were not placed by Alexander Babinski and were not authorized by him. Under the circumstances, CSI determined that the unauthorized trades in the Babinski account were initiated as part of an online fraud. CSI has made this determination in part by interviewing the customer and by reviewing the sixty (60) day IP login history of the Babinski account and confirming that the IP address that was used to access the Babinski account on August 28, 2006 was out-of-pattern.

2

18.   The unauthorized sales and purchases of AGGOO options contracts in the Babinski account referenced above as well as additional related unauthorized trades resulted in a total loss of $37,535.21. ETS has restored the Babinski account to its original state by reimbursing the account for the losses and restoring the securities positions as they existed prior to the unauthorized trading activity.

19.   ETS maintains an account, number [redacted]34, in the name of Aaron M. Troutman ("Troutman account). According to account records, Aaron Troutman is the only person authorized to access the Troutman account and to transact trades in the account.

20.   On August 28, 2006, between 11:06 a.m. and 11:08 a.m., sell orders were placed in the Troutman account, resulting in the liquidation of various stocks from the account.

21.   On August 28, 2006, at 11:07 a.m., the Troutman account purchased 50 AGGOO options contracts at $.95.

22.   On August 28, 2006, at 11:08 a.m., the Troutman account purchased 16 AGGOO options contracts at $.95.

23.   On August 28, 2006, CSI determined that the purchases of the AGGOO contracts on August 28, 2006 in the Troutman account, as described above, were not placed by Alexander Troutman and were not authorized by him. Under the circumstances, CSI determined that the unauthorized trades in the Troutman account were initiated as part of an online fraud. CSI has made this determination in part by interviewing the customer and by reviewing the sixty (60) day IP login history of the Troutman account and confirming that the IP address that was used to access the Troutman account on August 28, 2006 was out-of-pattern.

24.   The unauthorized purchases of AGGOO options contracts in the Troutman account referenced above as well as additional related unauthorized trades resulted in a total loss of $5,917.05. ETS has restored the Troutman account to its original state by reimbursing the account for the losses and restoring the securities positions as they existed prior to the unauthorized trading activity.

25.   ETS has concluded that the unauthorized trades were likely caused by someone gaining unauthorized access to the usernames and passwords for the Parisi, Babinski, and Troutman accounts. A review of the login histories of the Parisi, Babinski, and Troutman accounts on the days the unauthorized trading occurred was accomplished via ETS' secure website using the unique usernames and passwords for these accounts.

Autrey declaration REVISED REDACTED Oct 5 2007.doc

26.    E*Trade has provided the U.S. Securities and Exchange Commission documentation relating to the Parisi, Babinski, and Troutman accounts referenced above, including (1) account opening documents; (2) correspondence; (3) order tickets; (4) monthly account statements; and (5) account login and internet protocol histories for the relevant time period.

JAMES AUTREY

Executed:   October 11, 2007

Autrey declaration REVISED REDACTED Oct 5 2007.doc

## EXHIBIT C

*Securities and Exchange Commission v. Anatoly Russ, Civ No. 08CV0415 (LBS)*

**REDACTED**

## DECLARATION OF TIMOTHY L. KENINGER

I, Timothy L. Keninger, pursuant to 28 U.S.C. §1746, declare as follows:

1.    I make this Declaration of my personal knowledge and am competent to testify thereto.

2.    I am an adult resident of the State of Nebraska.

3.    I am employed by TD Ameritrade, Inc. ("TD Ameritrade") as Director, Compliance Operations.

4.    I have been employed by TD Ameritrade since May 25, 1995. My primary duties include day-to-day management of TD Ameritrade's Client and Regulatory Relations.

5.    I have been employed in the securities industry since January 1993 and I hold Series 63, 7, 4 and 24 Registrations.

6.    TD Ameritrade is a member broker-dealer of the Financial Industry Regulatory Authority (FINRA). Its principal office is located in Bellevue, Nebraska.

7.    TD Ameritrade customers are able to place orders to purchase or sell securities by accessing their brokerage accounts online. A TD Ameritrade brokerage account can only be accessed online by entering into the website a unique username and password that is assigned to each customer.

8.    TD Ameritrade has procedures reasonably designed to detect and prevent fraudulent or manipulative activity from occurring in client accounts. TD Ameritrade

Compliance and Fraud Analysts are responsible for the assessment of account activity to determine whether fraudulent or manipulative activity has occurred in an account.

9.     TD Ameritrade Account Number ▮▮▮▮▮36 is titled in the name of James Yu ("Yu account"). On September 19, 2006, at 12:24 p.m., Eastern Time ("ET"), 20 contracts of the iShares Lehman Aggregate Bond Fund March 99 Put options (symbol "AGG-OU") were purchased from the Yu account at a price of $1.90 per contract. On September 19, 2006, at 12:25 p.m. ET, 40 contracts of AGG-OU options were purchased from the Yu account at a price of $1.90 per contract.

10.     TD Ameritrade's Fraud and Surveillance Department determined that the trades to purchase contracts of AGG-OU options on September 19, 2006 in the Yu account were not authorized by the account owner. TD Ameritrade made this determination in part by interviewing the customer, comparing the IP addresses of previous trades placed by the customer with the IP addresses used to place the questioned trades on September 19, 2006, and by the manipulative nature of the trades (i.e., aggressive orders meant to influence the price of the stock with little regard for gain or loss in the account).

11.     The unauthorized trades of AGG-OU option contracts in the Yu account referenced above as well as additional related unauthorized trades resulted in a total loss of $8,700.33. TD Ameritrade has restored the account to the position it was in prior to the unauthorized trading activity.

12.     TD Ameritrade Account Number ▮▮▮▮▮73 is titled in the name of W.G. Timothy Brady ("Brady account"). On September 19, 2006 between 10:40 a.m. and 10:44 a.m. ET, existing positions were sold from the Brady account.

13.    On September 19, 2006, between 10:49 a.m. and 10:50 a.m. Eastern Time

("ET"), 50 contracts of the iShares Lehman Aggregate Bond Fund March 105 Put options

(symbol "AGG-OA") were purchased from the Brady account at a price of $7.40 per

contract. On September 19, 2006 at 10:53 a.m. ET, 25 contracts of AGG-OA were sold

from the Brady account at a price of $4.20 per contract. On September 19, 2006 at 11:04

a.m. ET, 25 contracts of AGG-OA were purchased from the Brady account at a price of

$6.70 per contract.

14.    On September 19, 2006 between 11:50 a.m. and 11:52 a.m. ET, 100 contracts

of AGG-OU were purchased from the Brady account at prices ranging from $2.90 per

contract to $3.50 per contract. On September 19, 2006 at 11:55 a.m. ET, 100 contracts of

AGG-OU were sold from the Brady account at a price of $1.00 per contract. On

September 19, 2006 at 12:01 p.m. ET, 40 contracts of AGG-OU were purchased from the

Brady account at a price of $2.00 per contract.

15.    TD Ameritrade's Fraud and Surveillance Department determined that the

trades to purchase and sell contracts of AGG-OA and AGG-OU options on September

19, 2006 in the Brady account were not authorized by the account owner. TD Ameritrade

made this determination in part by interviewing the customer, comparing the IP addresses

of previous trades placed by the customer with the IP addresses used to place the

questioned trades on September 19, 2006, and by the manipulative nature of the trades

(i.e., aggressive orders meant to influence the price of the stock with little regard for gain

or loss in the account).

16.    The unauthorized trades of AGG-OA and AGG-OU option contracts in the

Brady account referenced above as well as additional related unauthorized trades resulted

in a total loss of $47,156.90. TD Ameritrade has restored the account to the position it was in prior to the unauthorized trading activity.

17.    TD Ameritrade Account Number ████ 57 is titled in the name of Samir Shroff and Akruti Shroff ("Shroff account"). On September 5, 2006 between 9:53 a.m. and 10:33 a.m. ET, an existing position was sold from the Shroff account.

18.    On September 5, 2006 between 9:59 a.m. and 10:02 a.m. ET, 110 contracts of AGG-OU were purchased from the Shroff account at a price of $3.00 per contract. On September 5, 2006 at 10:10 a.m. ET, 38 contracts of AGG-OU were sold from the Shroff account at a price of $.55 per contract. On September 5, 2006 at 10:19 a.m. ET, 38 contracts of AGG-OU were purchased from the Shroff account at a price of $2.95 per contract.

19.    On September 5, 2006 at 10:32 a.m. ET, 45 contracts of AGG-OU were sold from the Shroff account at a price of $.60 per contract. On September 5, 2006 between 10:40 a.m. and 10:44 a.m. ET, 28 contracts of AGG-OU were purchased from the Shroff account at a price of $2.95 per contract.

20.    On September 6, 2006 between 10:18 a.m. and 12:17 p.m. ET, existing positions were sold from the Shroff account. On September 6, 2006 at 12:19 p.m. ET, 7 contracts of AGG-OU were purchased from the Shroff account at a price of $2.95 per contract.

21.    On September 7, 2006, between 10:58 a.m. and 11:07 a.m. ET, 140 contracts of the iShares Lehman Aggregate Bond Fund March 100 Put options (symbol "AGG-OV") were purchased from the Shroff account at prices ranging from $2.90 per contract to $4.00 per contract. On September 7, 2006 at 11:17 a.m. ET, 90 contracts of AGG-OV

were sold from the Shroff account at a price of $.10 per contract. On September 7, 2006 at 11:21 a.m. ET, 40 contracts of AGG-OV were purchased from the Shroff account at a price of $3.60 per contract. On September 7, 2006 at 11:30 a.m. ET, 20 contracts of AGG-OV were purchased from the Shroff account at a price of $2.80 per contract.

22.    TD Ameritrade's Fraud and Surveillance Department determined that the trades to purchase and sell contracts of AGG-OU on September 5th and 6th and the trades to purchase and sell AGG-OV options on September 7, 2006 in the Shroff account were not authorized by the account owner. TD Ameritrade made this determination in part by interviewing the customer, comparing the IP addresses of previous trades placed by the customer with the IP addresses used to place the questioned trades on September 5th, 6th, and 7th, 2006, and by the manipulative nature of the trades (i.e., aggressive orders meant to influence the price of the stock with little regard for gain or loss in the account).

23.    The unauthorized trades of AGG-OU and AGG-OV option contracts in the Shroff account referenced above as well as additional related unauthorized trades resulted in a total loss of $144,735.69. TD Ameritrade has restored the account to the position it was in prior to the unauthorized trading activity.

24.    The total net loss to TD Ameritrade resulting from the foregoing intrusions and TD Ameritrade's efforts to make the customers whole was $200,592.92.

25.    TD Ameritrade believes the cases outlined above are examples of unauthorized trading and the customers previously referenced appear to be victims of an account takeover. Each customer account has a UserID and Password that is unique to that account. These credentials are required to access the customer account via the

internet. The account credentials needed to access these accounts were acquired directly from the customers. It is likely that the account credentials were acquired through internet based schemes such as phishing, pharming or Trojan keylogging programs. The perpetrator(s) subsequently utilized the stolen account credentials to access our customer accounts via the Internet and place the trades in question. At the time the accounts were accessed, TD Ameritrade had no reason to believe that someone other than the customer accessed the account.

26.    TD Ameritrade has provided to the Securities and Exchange Commission records relating to the unauthorized trades, including, but not limited to: (a) the affected customers' names, account numbers and contact information, (b) the unauthorized Internet Protocol addresses used to access each of the accounts, and (c) detailed order information for the underlying trades.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 9 - 18, 2007

Timothy L. Keninger

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————————
                                                            :
SECURITIES AND EXCHANGE COMMISSION,                         :
                                                            :
                        Plaintiff,                          :
                                                            :
                        v.                                  :   Civ No. 08CV0415 (LBS)
                                                            :   ECF Case
ANATOLY RUSS,                                               :
                                                            :
                        Defendant.                          :
———————————————————————————————:

## <u>ORDER DIRECTING CLERK TO DISTRIBUTE FUNDS</u>

Having GRANTED an Order of Final Judgment on Default and Order of Permanent

Injunction and Other Relief Against Defendant Anatoly Russ on July 24, 2008 ("Final

Judgment"), and having GRANTED an Order Freezing Assets and Directing Payment to the

Court, and having received payment from TD Ameritrade, Inc. in the amount of $2,375.96

(receipt Number 659122, placed into CRIS on August 13, 2008), and payment from Penson

Financial Services, Inc. in the amount of $27,373.88 (receipt Number 658646, placed into CRIS

on August 8, 2008), and upon consideration of the Motion by Plaintiff Securities and Exchange

Commission (the "Commission") To Distribute Funds to certain parties who suffered losses due

to Defendant's fraud that are currently held by the Court, together with the accompanying sworn

declarations;

**NOW THEREFORE,**

**I.**

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

Plaintiff Commission's motion is hereby GRANTED.

## II.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED THAT:**

The Clerk shall, within 15 business days of this Order, issue payment to Scottrade, Inc., in the amount of $657.47. Payment shall be made by check payable to Scottrade, Inc. and mailed to the following address:

> Andrew C. Small, Esquire
> General Counsel
> Scottrade, Inc.
> 12800 Corporate Hill Drive
> St. Louis, Missouri 63131

The Clerk shall simultaneously transmit photocopies of such payment to the Commission's counsel, Scott Thompson, Senior Trial Counsel, Securities and Exchange Commission, Philadelphia Regional Office, 701 Market Street, Suite 2000, Philadelphia, PA 19106, phone (215) 597-2553, fax (215) 597-2740, via mail and facsimile.

## III.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED THAT:**

The Clerk shall, within 15 business days of this Order, issue payment to E*Trade, Inc., in the amount of $11,536.99. Payment shall be made by check payable to E*TRADE Securities LLC and mailed to the following address:

> James E. Ballowe, Jr., Esquire
> General Counsel
> E*TRADE Brokerage Holdings, Inc.
> 671 North Glebe Road, 12th Floor
> Arlington, VA  22203

The Clerk shall simultaneously transmit photocopies of such payment to the Commission's counsel, Scott Thompson, Senior Trial Counsel, Securities and Exchange Commission, Philadelphia Regional Office, 701 Market Street, Suite 2000, Philadelphia, PA 19106, phone (215) 597-2553, fax (215) 597-2740, via mail and facsimile.

## IV.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED THAT:**

The Clerk shall, within 15 business days of this Order, issue payment to TD Ameritrade, Inc., in the amount of $17,555.38.  Payment shall be made by check payable to TD AMERITRADE, Inc. and mailed to the following address:

> TD Ameritrade, Inc.
> Attn: James J. Vihstadt, Esquire
> 4211 South 102nd Street
> Omaha, NE 68127

The Clerk shall simultaneously transmit photocopies of such payment to the Commission's counsel, Scott Thompson, Senior Trial Counsel, Securities and Exchange Commission, Philadelphia Regional Office, 701 Market Street, Suite 2000, Philadelphia, PA 19106, phone (215) 597-2553, fax (215) 597-2740, via mail and facsimile.

_____
DATE

_____
Leonard B. Sand
United States District Judge